**STATE of Missouri, Respondent,**

v.

**Norma BARNUM, Appellant.**

No. SC 81962.

Supreme Court of Missouri,
En Banc.

March 21, 2000.

As Modified on Denial of Rehearing
April 25, 2000.

Nancy L. Vincent, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for Respondent.

WILLIAM RAY PRICE, Jr., Chief Justice.

Norma Barnum ("Appellant") was convicted of assault in the first degree, in violation of section 565.050, RSMo 1994, as an accomplice in the beating of Candis West. She appeals raising the following three issues: (1) whether the evidence was sufficient to support the conviction; (2) whether statements concerning a defendant's right not to testify made during voir dire resulted in plain error; and (3) whether victim impact testimony presented by Candis resulted in plain error. We affirm.

## I.

At about 1:00 a.m. on August 11, 1997, fourteen-year-old Candis West snuck out of her home and went to visit her boyfriend, Brandon Srader. When she arrived at the Srader residence, Brandon was not home but Appellant, his nineteen-year-old sister, was. Candis and Appellant decided to go for a walk. When they returned at approximately 2:00 a.m., Brandon and Christina Cassidy, Jessica Griffin, Heather Belt, Travis Laster, and Michael Jackson were at the Srader home. Candis did not know Christina, Jessica, or Heather, but quickly discovered that Brandon had begun a relationship with Jessica. Candis told Christina and Heather she was upset with Brandon's involvement with Jessica.

Christina and Heather told Jessica what Candis had said. The three girls concocted a plan to take Candis somewhere and beat her up. Everyone at the house, except for Candis and Michael, was aware of the girls' intention to attack Candis. The original plan was to carry out the beating at Wal–Mart. Travis drove Brandon, Candis, Jessica, Christina, Heather, and Appellant to the Wal–Mart store where the girls used the bathroom. The attack did not begin, however, because Travis secretly told the other girls that he knew of a better spot for the beating. Travis then drove the entire group to a low-water bridge in Pettis County, Missouri.

As everyone got out of the vehicle, Christina hit Candis in the face and began pulling her hair. Candis did not fight back but instead fell to the ground. As Christina began to kick Candis, Jessica and Heather joined in. Over the course of one hour, the three girls dragged Candis by her hair over the concrete, attempted to burn her hair with a lighter, forced her to remove all her clothing, spanked her with her shoes, threw her into the water, and tossed her clothes in after her. Brandon, Travis, and Appellant stood and watched the entire assault on Candis.

At some point, Appellant, who was laughing during the beating, yelled, "yeah, yeah, let's kill her, kill her ... run her over with the van." Eventually, Travis told Christina, Jessica, and Heather that it was time to stop. The group returned to the vehicle, leaving Candis in the water, and Christina warned Candis that if she moved, they would come back and kill her. Appellant accompanied the group as they left, making no attempt to assist Candis or get medical assistance for her.

Candis, naked and severely beaten, was eventually able to stop a passing car. The driver gave her a flannel shirt and a jacket, and drove her to the police station in Sedalia. The police briefly spoke to Candis, photographed her injuries, and called for an ambulance. Before leaving to go to the hospital, Candis gave Sgt. Mike Koenig the names and addresses of the individuals involved in the attack. Sgt. Koenig's investigation uncovered Candis' clothing and jewelry under the bridge. Travis, Appellant, and "three other white female juveniles" were arrested.

At the hospital, Candis was treated for a crushed eye bone, a broken nose, and two broken ribs. Candis was later sent by ambulance to a hospital in Columbia where more X-rays and a CAT scan were performed. Eventually, she had to have reconstructive surgery on her eye socket, and was plagued by vision problems and headaches.

Appellant was charged with the first-degree assault of Candis West under an accomplice liability theory and was tried before a jury on February 25, 1998. During voir dire, the prosecutor said:

> The second term that we talk about probably endlessly and to the point that you're all tired of it is the burden of proof. And that's the idea that it's up to me to prove to you that the Defendant did what we charged. It's not up to the Defendant to prove anything. The Defendant doesn't have to present any evidence, doesn't have to testify, and that's

our legal system. That's the way it works in our legal system.

At no point during voir dire did defense counsel object to this statement.

Appellant chose not to testify on her own behalf at trial. The State presented six witnesses; Appellant presented none. Candis' testimony included evidence that after the attack she moved to "Girlstown" and had nightmares that "they'd come back for [her]." At the conclusion of the evidence, the court overruled Appellant's motion for judgment of acquittal. The jury found Appellant guilty of assault in the first degree and recommended a sentence of ten years imprisonment. The court sentenced Appellant in accordance with the jury's recommendation.

## II.

■ The law of accessory liability emanates from statute, as construed by the courts. *State v. Richardson*, 923 S.W.2d 301, 317 (Mo. banc 1996). "A person is criminally responsible for the conduct of another when either before or during the commission of an offense, with the purpose of promoting the commission of the offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Section 562.041.1(2), RSMo 1994. This subsection is designed to make individuals who could not be guilty of a crime solely on the basis of their own conduct, guilty nonetheless as an accessory. Comment, section 562.041.1(2).

■ Appellant argues that because she did not actively participate in the planning or actual beating of Candis, and because the attackers did not act directly on the suggestions she shouted during the attack, the evidence was insufficient to support her conviction of first-degree assault. Where there is a challenge to the sufficiency of the evidence, "the evidence together with all reasonable inferences is viewed favorably to the verdict and evidence or inferences to the contrary are ignored." *State v. Mallett*, 732 S.W.2d

527, 534 (Mo. banc 1987). Review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989).

▓▓▓ Missouri eliminated the distinction between principals and accessories in 1979, and it is now the law that all persons who act in concert are equally guilty. *Bass v. State,* 950 S.W.2d 940, 942 (Mo. App.1997) (citing *State v. Isa,* 850 S.W.2d 876 (Mo. banc 1993)). The doctrine of accomplice liability embodied in section 562.041.1(2) "comprehends any of a potentially wide variety of actions intended by an individual to assist another in criminal conduct." The evidence need not show the defendant personally committed every element of the crime. *State v. Burch,* 939 S.W.2d 525, 529 (Mo.App.1997). *Richardson,* 923 S.W.2d at 317.

▓▓▓ While mere presence at a crime scene, considered alone or in combination with a refusal to interfere, is insufficient to support a conviction, "[t]he broad concept of 'aiding and abetting' plainly encompasses acts that could be construed as 'encouragement' or its derivation." *Id.* Mere encouragement is enough. *Id.* (citing *State v. Stockdale,* 415 S.W.2d 769, 772 (Mo. 1967)); *Burch,* 939 S.W.2d at 529. Encouragement is the equivalent of conduct that "by any means countenances or approves the criminal action of another." *Richardson,* 923 S.W.2d at 318 (citing *State v. Stidham,* 305 S.W.2d 7, 15 (Mo. banc 1957)). "Countenances or approves" includes "encouraging or exciting [a criminal act] by words, gestures, looks, or signs." *Stidham,* 305 S.W.2d at 15. In fact, associating with those that committed the crime before, during, or after its occurrence, acting as part of a show of force in the commission of the crime, attempting flight from the crime scene, or failing to assist the victim or seek medical help are all factors which may be considered. *State v. Kobel,* 927 S.W.2d 455, 459 (Mo.App.

1996); *State v. LaRue,* 811 S.W.2d 40, 45 (Mo.App.1991).

The direct evidence and inferences favorable to the verdict show the evidence was sufficient to convict Appellant of assault in the first degree. It was testified that Appellant was present during the planning of the attack on Candis. It is undisputed that Appellant accompanied the attackers and Candis to Wal–Mart and to the area under the low-water bridge where the beating took place. Appellant stood and watched the entire attack, laughing. Travis Laster testified that during the beating, Appellant stated, "just kill her" and near the end of the attack, "just run her over with the van." Candis testified Appellant stated, "yeah, yeah, let's kill her, let's kill her, let's run her over with the car—or the Van." Either version shows clear support and encouragement of the attack. Appellant got back in the van with the attackers when the beating ended and left Candis beaten, naked, and alone.

Appellant argues that because the three attackers did not carry out her suggestion of running Candis over with the van, that her words did not encourage them. We disagree. Appellant's statements certainly could be found by the jury to be words of general encouragement during the beating and they, combined with the other facts of Appellant's participation, adequately support the jury's verdict.

### III.

▓▓▓ The Fifth Amendment to the United States Constitution, Article I, section 18 of the Missouri Constitution, section 546.270, RSMo 1994, and Supreme Court Rule 27.05(a) grant criminal defendants the right not to testify and forbid comments by either party concerning the exercise of that right. In pertinent part, section 546.270 states, "If the accused shall not avail himself ... of his ... right to testify ... it shall not ... be referred to by any attorney in the case...." The purpose of this rule is to avoid focusing the

jury's attention upon a defendant's failure to testify. *State v. Neff,* 978 S.W.2d 341, 344 (Mo. banc 1998). Under section 546.270, there is no question that it is error to allude, either directly or indirectly, to a defendant's failure to testify on his own behalf. *State v. Conway,* 348 Mo. 580, 154 S.W.2d 128, 132 (1941). The prohibition extends throughout the trial, even during voir dire. *State v. Lindsey,* 578 S.W.2d 903 (Mo. banc 1979).

■■■■ This Court, however, has never held that a mistrial is always required after a direct reference by an attorney to a defendant's right to testify. *Neff,* 978 S.W.2d at 344–45. Whether "a particular improper argument is so prejudicial under the facts in a particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial court." *State v. Wilborn,* 525 S.W.2d 87, 95 (Mo.App.1975). Because defense counsel failed to object to the prosecutor's statements during voir dire, our review is for plain error. Rule 30.20.

■■ In the present case, the prosecutor made the following remarks during voir dire:

The second term that we talk about probably endlessly and to the point that you're all tired of it is the burden of proof. And that's the idea that it's up to me to prove to you that the Defendant did what we charged. It's not up to the Defendant to prove anything. The Defendant doesn't have to present any evidence, doesn't have to testify, and that's our legal system. That's the way it works in our legal system.

These remarks did not pertain to Appellant's failure to testify but were merely restatements of the law and general comments concerning the rights of any defendant in a criminal trial. Considering the record as a whole, manifest injustice did not result due to the nature of the remarks and the stage of the trial at which they were made. Appellant's reliance on *State v. Lindsey,* 578 S.W.2d 903 (Mo. banc 1979), is misplaced in that an objection was timely made in that case. Moreover, *Lindsey* should not be read to imply that any general statement of the law, such as occurred here, must always be considered prejudicial to a defendant.

■■■ Appellant also claims manifest injustice resulted because of comments made by the prosecutor during closing arguments that "there's no contest about the evidence," that the evidence was "absolutely uncontradicted," that Defendant "needs to be found guilty because the evidence is uncontradicted beyond a doubt." There is no merit in this claim. It is well settled in Missouri that phrases such as "uncontradicted" and "undisputed" do not violate a defendant's rights under section 546.270. *State v. Garcia,* 357 S.W.2d 931, 935 (Mo. 1962); *State v. Baker,* 439 S.W.2d 515, 516 (Mo.1969); *State v. Cokes,* 682 S.W.2d 59, 61 (Mo.App.1984).

## IV.

■■ During her testimony at trial, Candis was questioned as follows:

Q: Okay. Do you live at home anymore?

A: No.

Q: Has this assault caused some problems for you other than physical?

A: Yeah.

Q: Where do you live now?

A: Missouri Girls Town.

Q: And where is that located?

A: Twenty minutes outside of Columbia.

Q: After this occurred, did you have any problems sleeping at night?

A: Yes.

Q: Like what?

A: I had nightmares, and I was afraid they'd come back for me.

Appellant claims this "victim impact testimony" was unduly prejudicial in that it was neither relevant nor probative of any issue in controversy and, therefore, the prejudicial effects of the testimony out-

weighed whatever probative value it may have had. Appellant argues the testimony was designed "solely to inflame the passions and prejudices of the jury," and its introduction resulted in manifest injustice. As there was no objection to the testimony at the time it was given, we review for plain error only. Rule 30.20.

Assault in the first degree requires a finding of "serious physical injury." Section 565.050. The evidence at issue was directly relevant to establish that element of the crime and was mentioned only briefly during Candis' testimony. Appellant cannot escape the seriousness of her own actions by claiming that probative, relevant evidence of the consequences of her actions is unduly prejudicial.

For the reasons stated above, we affirm the judgement of the trial court.

All concur.