**STATE of Missouri, Respondent,**

v.

**Rubey Ellen POPE, Appellant.**

**No. WD 57265.**

Missouri Court of Appeals,
Western District.

June 19, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 24, 2001.

Application for Transfer Denied
Aug. 21, 2001.

Craig A. Johnston, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, HAROLD L. LOWENSTEIN and VICTOR C. HOWARD, Judges.

ELLIS, Judge.

Rubey Ellen Pope was charged by information, filed on February 18, 1998, with

second degree murder, § 565.021.1,[1] and armed criminal action, § 571.015, after the death of her husband, William J. ("Billy Joe") Pope. The case proceeded to trial before a jury on August 24, 1998. The trial ended on August 25, 1998, when the court declared a mistrial due to improper comments made by the prosecutor. A second trial commenced on January 25, 1999, and the jury convicted Ms. Pope of involuntary manslaughter, § 565.024, and armed criminal action, § 571.015. Ms. Pope was sentenced, according to the recommendations of the jury, to a $5,000 fine for the involuntary manslaughter conviction and three years in prison for the armed criminal action conviction. This appeal followed.

Ms. Pope and her husband had a turbulent marriage during which they had frequent verbal and physical fights. Often these fights would result in physical injury to Ms. Pope. On August 18, 1997, after several hours of continued verbal and physical fighting, Ms. Pope locked herself in her home, leaving Mr. Pope outside on the patio. Ms. Pope placed a gun to her own stomach and talked about killing herself. After looking out the window and seeing Mr. Pope, she said, "Look at them big old eyes." Mr. Pope pointed something at Ms. Pope, and Ms. Pope fired the gun at Mr. Pope. Mr. Pope died of a gunshot wound to the head.

In her sole point on appeal, Ms. Pope contends the trial court erred in declaring a mistrial and ordering a new trial because the second trial subjected her to double jeopardy.

Ms. Pope's first trial commenced on August 24, 1998. After the jury was impaneled and sworn, during the cross-examination of a highway patrol trooper concerning Ms. Pope's post-arrest statements, the following colloquy occurred:

[Defense Counsel]: Did she say, "I thought he had a gun; he has shot guns at me before?"

[Trooper Platte]: Yes, sir, I believe she said that.

[Defense Counsel]: Did she say at a later time in the interview, "I think he had a gun?"

[Assistant Attorney General]: Your Honor, I'm going to object to this as being extremely self-serving and hearsay.

[Defense Counsel]: Absolutely, it is, judge.

[Assistant Attorney General]: It goes beyond any exception to the hearsay rule and **the defendant should have to testify to this herself.**

(emphasis added).

After this exchange, defense counsel asked to approach the bench, and upon doing so, objected to the prosecutor's comment as an improper comment upon Ms. Pope's right to testify and requested a mistrial. The prosecutor admitted to making a mistake, but he insisted this was not "mistrial material." Rather, the prosecutor suggested the proper remedy was for the court to instruct the jury to disregard his previous comment. Just prior to taking a recess to research the issue, defense counsel suggested that the court continue with the trial and rule on his motion for a mistrial after the trial was finished. The court and the prosecutor both rejected this suggestion.

After the recess, the court found that the comment made by the prosecutor was not a deliberate act. The court engaged in a lengthy discussion with counsel, asking for suggestions in curing the error. Then the court recessed again to allow the attor-

---

**1.** All statutory references are to RSMo (1994) unless otherwise indicated.

neys to research the issue on their own. Upon reconvening, defense counsel sought to withdraw the motion for mistrial. The trial court then noted that *State v. Feltrop,* 803 S.W.2d 1, 17–18 (Mo. banc 1991),[2] which had been cited to the court by the prosecutor, allowed such a request for mistrial to be waived by a defendant. The court then conducted a hearing as to whether Ms. Pope was voluntarily, knowingly and intelligently waiving her request for a mistrial. After hearing testimony from Ms. Pope about why she wanted to proceed with the trial, the court rejected her waiver, finding that it was not a voluntary, knowing and intelligent waiver. Accordingly, the court declared a mistrial, and the jury was discharged and released.

The case was reset for September 28, 1998. At her second trial, Ms. Pope was found guilty of involuntary manslaughter and armed criminal action. She was sentenced to pay a $5,000 fine on the involuntary murder charge and to three years in the Department of Corrections for the armed criminal action conviction.

Ms. Pope appeals her convictions, and in her sole point on appeal, she makes two arguments: 1) that the trial court declared the mistrial in her first trial *sua sponte*

and erred in so doing; and 2) that the second trial violated her constitutional right against double jeopardy.[3]

■ At the outset, we observe that the prosecutor's comments in the first trial that brought about the mistrial were clearly improper. In *State v. Barnum,* 14 S.W.3d 587 (Mo. banc 2000), our Supreme Court stated:

> The Fifth Amendment to the United States Constitution, Article I, section 18 of the Missouri Constitution, section 546.270, RSMo 1994, and Supreme Court Rule 27.05(a) grant criminal defendants the right not to testify and forbid comments by either party concerning the exercise of that right. In pertinent part, section 546.270 states, "If the accused shall not avail himself ... of his ... right to testify ... it shall not ... be referred to by any attorney in the case. . . ." The purpose of this rule is to avoid focusing the jury's attention upon a defendant's failure to testify. Under section 546.270, there is no question that it is error to allude, either directly or indirectly, to a defendant's failure to testify on his own behalf. The

---

**2.** In *Feltrop,* the Missouri Supreme Court upheld the trial court's denial of a mistrial after the defendant expressly waived his claim of error. In that case, the prosecutor made the following impermissible comment on the defendant's failure to testify during closing argument: "And when you think about self-defense, let me tell you something. You remember this. Put yourself in our position just a second. How do you disprove self-defense? There was (sic) only two people there, and one of them is dead and can't talk for herself." *Feltrop,* 803 S.W.2d at 17. After this comment was made, defense counsel moved for a mistrial. *Id.* at 18. The trial court expressed its intent to sustain the motion, but instead, defendant withdrew his motion. *Id.* The defendant took the stand and testified, to questions by both attorneys and the court, that he understood that he was

waiving any claim of error regarding this specific argument. *Id.* The Supreme Court stated that "it [was] apparent that [defendant] made an informed and deliberate choice to, as it were, gamble on the verdict. [Plain error review was denied because h]e unequivocally waived his objection to the prosecutor's comment and may not now claim error." *Id.*

**3.** The state argues that Ms. Pope's double jeopardy claim was not preserved for review. Ms. Pope counters by pointing out that "[i]f the trial court was without the power or jurisdiction to proceed against a defendant twice for the same offense, then relief can be granted on appeal even though the issue was not preserved at trial." *State v. Whitmore,* 948 S.W.2d 643, 649 (Mo.App. W.D.1997).

prohibition extends throughout the trial, even during voir dire.

*Id.* at 591–92 (internal citations omitted). "A direct reference to a defendant's failure to testify[4] . . . is one where the prosecutor's reference thereto is straightforward, definite and certain. Direct references are made when the prosecutor uses words such as 'defendant,' 'accused' and 'testify' or their equivalent." *State v. Futo,* 990 S.W.2d 7, 14 (Mo.App. E.D.1999)(internal citations omitted). In the case at bar, the prosecutor made a direct reference to Ms. Pope's failure to testify when he stated, "the **defendant** should have to **testify** to this herself." (emphasis added). Thus, the comment was improper, defense counsel objected, and the request for a mistrial was properly before the court.

Ms. Pope contends that she withdrew her request for a mistrial and waived any claim of error based on the prosecutor's comment. Thus, her argument on appeal is premised on the assertion that the mistrial was declared by the trial court *sua sponte* after she had waived any claim of error. We disagree.

In the case at bar, it is obvious from the statements made by the court and from its docket entries that the court declared the mistrial because it did not find Ms. Pope's waiver to be knowingly, intelligently, and voluntarily made. In its docket sheet, the court recorded that Ms. Pope requested a mistrial and that the court intended to grant it. The court also recorded in its docket sheets that Ms. Pope "attempted to withdraw [her] motion for mistrial and upon examination of defendant, [the] court finds that said withdrawal is not intelligently and voluntary (sic) made. Mistrial is declared." The court also explained in open court "that Mrs. Pope by her testi-

mony has raised sufficient concerns to the court that this would be a fully, voluntarily, and knowingly (sic) waiver of the right of plain error that could exist by the comments of the prosecutor."

■ " 'A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.' " *State v. Bucklew,* 973 S.W.2d 83, 90 (Mo. banc 1998)(quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *See also State v. Wright,* 30 S.W.3d 906, 911 (Mo.App. E.D.2000). " '[T]he determination of whether a waiver is knowing and intelligent depends on the facts and circumstances surrounding that case and review is based on the totality of the circumstances, taking into account the background, experience and conduct of the accused.' " *State v. Johnson,* 988 S.W.2d 115, 120 (Mo.App. W.D.1999)(quoting *Bucklew,* 973 S.W.2d at 90).

■ Ms. Pope was questioned extensively by both attorneys and by the court. She testified that she understood the following: that the comment made by the prosecutor constituted "plain error;" that the judge was prepared to stop the current trial and start over with a brand new jury and a brand new trial if she wanted; that by going forward with the current trial, she would not be able to raise the prosecutorial comments as error on appeal; and that if the jury considered her failure to testify because of the prosecutorial comments, she had no argument of error against that consideration. Ms. Pope testified that she depended some upon the advice of her attorney in reaching her decision to "go forward" with the trial.

---

4. In *State v. Ward,* 702 S.W.2d 545, 547 (Mo. App. W.D.1985), we determined there is no distinction between a defendant's "right not to testify" and a defendant's "failure to testify."

When the court questioned Ms. Pope, the judge noticed hesitation in some of her answers. The court asked her why she wanted to go ahead with the trial right then and she responded that she was "tired." After clarification by the court, Ms. Pope stated that she understood what was happening, and she just wanted the trial to be over. Ms. Pope also hesitated when asked if her desire to continue with the trial had anything to do with finances. She stated she had no money, but after being questioned by her attorney, she stated that she was not basing her decision on finances. Ms. Pope mentioned that she was concerned for her family, that the trial and traveling to court placed a hardship on her family. But, Ms. Pope testified that ultimately she was not basing her decision on finances or her concern for her family.

After the court finished questioning Ms. Pope, the prosecutor expressed "some concerns" about Ms. Pope's answers. He stated that he did not really know what Ms. Pope said and that he was leaving the decision up to the court. After these comments by the prosecutor, the court asked Ms. Pope a few more questions based on the *Feltrop* case. The court explained to Ms. Pope the similarities between her case and the facts in *Feltrop* and then asked her again if she wanted to waive her right to claim error for the prosecutor's comments. Ms. Pope asked to speak with her attorney before answering. After conferring with her attorney, Ms. Pope told the court she wanted to proceed with the trial. When asked why she wanted to proceed, she stated, "Because I want to. I want to go forward. I mean I don't think that I'm guilty of the crime and I want to show this."

It is evident from the record that the trial judge did not believe that Ms. Pope was entering her waiver knowingly and intelligently. "We defer to the trial court's findings even if the evidence could support a different conclusion because it is in a better position to judge witness credibility, sincerity, and character and other intangibles not revealed in a transcript." *Ansley v. Ansley*, 15 S.W.3d 28, 32 (Mo.App. W.D. 2000). The trial court was in a better position to determine whether Ms. Pope knowingly and intelligently waived her rights because, among other things, the trial court had the opportunity to observe Ms. Pope as she testified. While there are many intangibles that readily cannot be extracted from a transcript, it is apparent from the record before us that the court and the prosecutor both had doubts about the sufficiency of Ms. Pope's waiver. Thus, considering the deference we must give to the trial court in such situations, we cannot find that the trial court erred in rejecting Ms. Pope's withdrawal of her objection and waiver of her claim of error.

■ The next question is whether under these circumstances the trial court erred in declaring a mistrial. A mistrial is a drastic remedy that should be used sparingly and granted only in extraordinary circumstances. *State v. Clover*, 924 S.W.2d 853, 856 (Mo. banc 1996)(quoting *State v. Parker*, 886 S.W.2d 908, 922 (Mo. banc 1994)). A mistrial is not always required when an attorney makes a direct reference to a defendant's right to testify. *Barnum*, 14 S.W.3d at 592; *See also State v. Neff*, 978 S.W.2d 341, 344 (Mo. banc 1998). When an objection is made to the improper prosecutorial comments and the trial court finds merit to the objection, admonishing the jury generally cures the prejudicial effect of comments made by the prosecutor. *Clover*, 924 S.W.2d at 856 (quoting *State v. Wren*, 643 S.W.2d 800, 802 (Mo.1983)); *Neff*, 978 S.W.2d at 345. " '[T]he prejudice from such comments can normally be cured by an instruction to the jury.' " *Neff*, 978 S.W.2d at 345 (quoting

*State v. Dees,* 916 S.W.2d 287, 296 (Mo. App. W.D.1995)).

■ But, "whether 'a particular improper argument is so prejudicial under the facts in a particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial court.'" *Barnum,* 14 S.W.3d at 592 (quoting *State v. Wilborn,* 525 S.W.2d 87, 95 (Mo.App. E.D.1975)). The trial court is given this discretion because it is in a better position to observe the proffered evidence and its impact on the jury. *Clover,* 924 S.W.2d at 856. Thus, appellate review is for an abuse of discretion. *Id.* "Judicial discretion is deemed abused only when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Neff,* 978 S.W.2d at 345. Given this standard of review, we cannot say that the trial court abused its discretion in determining that the prejudicial effect of the prosecutor's comment required the declaration of a mistrial. *See Clover,* 924 S.W.2d at 856.

■ Finally, we address whether the declaration of the mistrial barred retrial.

Whether double jeopardy bars retrial after the trial court has declared a mistrial depends largely on the defendant's position at the time the mistrial was declared. If the defendant requested or consented to the mistrial, then double jeopardy does not bar a second trial unless the prosecutor intentionally goaded the defendant into making the request. On the other hand, where the defendant did not consent to the mistrial, double jeopardy does bar retrial un-

less the declaration of a mistrial was justified by "manifest necessity."

*State ex rel. Reynolds v. Kendrick,* 868 S.W.2d 134, 136 (Mo.App. E.D.1993) (internal citations omitted). We have already determined that Ms. Pope did not make an effective withdrawal of her objection and waiver of her claim of error. We have likewise found that the trial court did not abuse its discretion in granting the mistrial. Accordingly, the mistrial was declared as a result of Ms. Pope's objection.[5]

Judgment affirmed.

All concur.

---

5. There is nothing in the record that would suggest that the prosecutor intentionally tried to goad Ms. Pope into making the request. *See Kendrick,* 868 S.W.2d at 136.