STATE of Missouri, Plaintiff–Respondent,

v.

Gary L. BOYD, Defendant–Appellant.

No. 24689.

Missouri Court of Appeals, Southern District, Division One.

Dec. 31, 2002.

---

Rosalynn Koch, Assistant State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Gary L. Boyd ("Appellant") was convicted by a jury of the class C felony of receiving stolen property, a violation of Section 570.080.[1] The trial court sentenced Appellant, as a prior offender, to six years imprisonment. Appellant raises two points in this appeal.

In the first, Appellant alleges that the trial court abused its discretion in denying his motion for a mistrial when the State informed the jury during voir dire that Appellant was not obliged to testify at trial. In the second of Appellant's points, he contends that the evidence was insufficient to support his conviction of the felony of receiving stolen property in that it failed to establish beyond a reasonable doubt that the property in question was valued at more than $150 at the time the crime occurred, as required by the applicable statute. We are compelled to agree with this last argument. However, because the evidence was sufficient to support a conviction for the lesser included offense of misdemeanor receiving stolen property, we reverse Appellant's conviction, enter a conviction for misdemeanor receiving stolen property, and remand the case to the trial court for resentencing.

Charity Halverson ("Halverson") bought a new 1999 Honda Rebel 250 motorcycle in May 1999 for $3500. Halverson paid cash for the motorcycle and had it properly registered, licensed, and insured. She did not ride it, however, as it did not have an automatic transmission. Instead, Halverson allowed her son Frankie to drive it to and from work.

On August 28, 2000, Frankie was riding the motorcycle when he was struck by a car in Joplin, Missouri. Frankie asked the paramedics who attended to him if they would remove the key from the motorcy-

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

cle, but they refused. Frankie was taken to a local hospital where he was treated for a broken leg. Halverson saw him about three hours after the accident, and Frankie told her that the motorcycle had not been damaged "very much" in the accident.

After visiting Frankie in the hospital, Halverson and her husband went to the accident scene to recover the motorcycle. When they arrived, it was gone. Prior to going to the hospital to see Frankie, Halverson's husband had called his cousin, who lived near the accident scene, to ask him to get the motorcycle. When Halverson and her husband did not find the motorcycle at the accident scene, they called the cousin again to see if it had already been recovered. The cousin said that the motorcycle had not been at the accident scene when he went there earlier, so Halverson called the sheriff and reported it stolen. She also contacted wrecking yards looking for the motorcycle, but with no success.

Sometime in early September 2000, Appellant brought a motorcycle to the Jasper County home of Mary Wilson ("Wilson") and her husband. Appellant brought it to the house in the trunk of a car and asked Wilson's husband, a friend of Appellant's, to help him unload and ride the motorcycle. Appellant told Wilson that he owned the motorcycle, and he rode it at least every other day during the autumn of 2000. He offered to sell it to the Wilson's but did not, as he could not produce a certificate of title. Appellant told Wilson that he had put a windshield on the motorcycle and had painted it black. He rode the motorcycle regularly until December 2000, when he was given permission to store it at the Wilson's home.

On December 7, 2000, Investigator Jerry Gilbert ("Gilbert") of the Jasper County Sheriff's Department went to the Wilsons'

home, pursuant to an unrelated investigation, and found the motorcycle during a search. A check of its vehicle identification number revealed that it was stolen. Gilbert noticed that the ignition had been removed, that it had been spray-painted black, and that it had no license plates. Appellant, who was present at the time, told Gilbert that it was his motorcycle. Gilbert had the motorcycle towed to George's Towing Service in Joplin.

Sometime in March 2001, Halverson went to George's Towing to inspect the motorcycle. When she saw it, she noted that "[e]verything about it [had] changed" and it was "barely recogniz[able]." It appeared to have been exposed to the elements and looked like a "big piece of junk." She noticed that there were dents in the gas tank, that it had been repainted black, and that a windshield had been added. George's Towing wanted $800 for the motorcycle, but Halverson said it looked like it was worth less than $200 and that she would not give even $100 for its recovery.

Appellant was charged with the felony of receiving stolen property, with the State alleging in the information that the crime was committed "on or about December 7, 2000." Appellant did not testify at his trial, and presented only the testimony of Trooper Brad Beardon of the Missouri State Highway Patrol, who had interviewed Appellant. Beardon testified that Appellant denied stealing the motorcycle. Appellant was found guilty of the felony of receiving stolen property, and the trial court sentenced him to six years imprisonment. This appeal followed.

In his first point on appeal, Appellant argues that the trial court abused its discretion in overruling his motion for a mistrial when the State informed prospective jurors during voir dire of Appellant's Fifth Amendment right not to testify in his de-

fense. Appellant claims the prosecutor's comments "focused the [prospective jurors'] attention on [Appellant's] failure to take the stand and so improperly influenced" the panel.

During the State's voir dire, the following exchange took place:

BY [THE PROSECUTOR] ... Is there anyone here that despite the instruction of the Court, and the Court will instruct you before we begin, that the defendant does not have to testify. And you cannot hold that against him because—

BY [APPELLANT'S COUNSEL] Objection, Your Honor.

(Counsel approached the bench and the following proceedings were had:)

[BY APPELLANT'S COUNSEL:] It isn't proper in voir dire for him to bring up the subject of testifying or not testifying. That is the province of the defense, not State.

BY THE COURT: Well, I would suggest we let defendant's counsel cover that issue.

BY [THE PROSECUTOR]: Yes, Judge.

BY [APPELLANT'S COUNSEL]: Your Honor, I would ask that the jury be stricken, because that is a reversible error for him to have brought that up.

BY THE COURT: Well, the request will be denied.

BY [THE PROSECUTOR]: Thank you, Judge.

(The proceedings returned to open court.)

Appellant argues that because the State "directly and specifically discussed [Appellant's] right not to testify," it was "a foregone conclusion that the jury would be watching to see" if Appellant would in fact testify. Appellant argues that the effect of the prosecutor's statement and the denial of Appellant's motion for a mistrial was to "in effect den[y] his right to refuse to take the stand without adverse consequences."

■■■ Criminal defendants have the right not to testify and any comment by either party concerning the exercise of that right is forbidden. *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000); U.S. CONST. Amend. V; Mo. CONST. art. I section 18; Section 546.270; Rule 27.05(a).[2] In pertinent part, Section 546.270 provides that if "the accused shall not avail himself ... of his ... right to testify ... it shall not ... be referred to by any attorney in the case." "The purpose of this rule is to avoid focusing the jury's attention upon a defendant's failure to testify." *Barnum* at 591–92 (citing *State v. Neff*, 978 S.W.2d 341, 344 (Mo. banc 1998)). It also is clear that the prohibition on references to a defendant's exercise of this right applies during voir dire. *Barnum* at 592 (citing *State v. Lindsey*, 578 S.W.2d 903 (Mo. banc 1979)).

■■■ However, mistrial is a drastic remedy reserved only for the most extraordinary circumstances. *State v. Mitchell*, 41 S.W.3d 574, 580 (Mo.App. S.D. 2001). "The decision to grant a mistrial is left to the sound discretion of the trial court because it is in the best position to observe the impact of a problematic incident." *Id.* We will not disturb a trial court's ruling regarding the granting of a mistrial absent a clear showing in the record of an abuse of discretion. *State v. Witte*, 37 S.W.3d 378, 383 (Mo.App. S.D. 2001).

■■■ Based upon the record before us and the aforementioned constitutional, statutory and case authority, there can be

**2.** References to rules are to Missouri Rules of Criminal Procedure (2000).

little doubt that the statement made by the prosecutor and challenged by Appellant here and at trial constituted error. In support of his argument that the error warranted the drastic remedy of mistrial, Appellant relies upon *Lindsey* and *State v. Graham*, 964 S.W.2d 836 (Mo.App. S.D. 1998), where both the Missouri Supreme Court and this court, respectively, held that prosecutorial references during voir dire that closely resembled those complained of here [3] called for a declaration of mistrial, and that it was an abuse of discretion for the trial court not to have granted timely requests for that remedy. Appellant argues there is no meaningful difference between the statements found to warrant a mistrial in *Lindsey* and *Graham*, and the statement at issue here.

In response, the State draws our attention to *Barnum*, a more recent decision of our supreme court than *Lindsey*, and issued after our opinion in *Graham*, where the court noted that it had "never held that a mistrial is always required after a direct reference by an attorney to a defendant's right to testify." *Barnum* at 592. The court went on to state that "[w]hether 'a particular improper argument is so prejudicial under the facts in a particular case, as to necessitate a . . . discharge of the jury, is largely within the discretion of the trial court.'" *Id.* (quoting *State v. Wilborn*, 525 S.W.2d 87, 95 (Mo.App.St.L.Dist. 1975)). The prosecutor in *Barnum* informed the panel during voir dire that the "Defendant doesn't have to present any evidence, doesn't have to testify, and that's our legal system. That's the way it works

in our legal system." *Id.* at 592. The court held that these remarks "did not pertain to Appellant's failure to testify but were merely restatements of the law and general comments concerning the rights of any defendant in a criminal trial." *Id.* Noting that the appellant in that case relied upon the holding in *Lindsey*, as does Appellant here, the *Barnum* court cautioned that "*Lindsey* should not be read to imply that any general statement of the law, such as occurred here, must always be considered prejudicial to a defendant." *Id.* The State argues that the statement in *Barnum* is materially similar to the statement at issue here, i.e., it too is a general statement of the law, and that, therefore, the holding in *Barnum* mandates that we defer to the discretion of the trial court in its decision not to grant a mistrial. We find this argument persuasive. Here, the prosecutor informed the prospective jurors that "the Court [would] instruct [them] before [trial], that the defendant does not have to testify. And you cannot hold that against him[.]" Not only did these comments constitute a general restatement of the law as it is routinely given to juries via court-read instructions, the prosecutor also characterized the statements as predictive of what the panel would hear from the trial court and not the prosecutor. The statements at issue here are not sufficiently dissimilar to those considered in *Barnum* to justify our deviating from its holding, which we are bound to follow as the latest controlling decision of our supreme court. Mo. CONST. art. V section 2; *Graham* at 838; *State v. Phinney*, 885 S.W.2d 341, 344

---

**3.** In *Lindsey*, the prosecutor told the panel of potential jurors that the defendant "doesn't have to go forward with any evidence if he doesn't wish to. He doesn't have to take the stand if he doesn't want to[.]" *Lindsey* at 903. In *Graham*, this court considered the following statement by the State during voir dire: "The state's going to call several witnesses. I don't know if the defendant will call any witnesses. He doesn't have to. That's not their job. Surely none of you here will find the defendant guilty just because the defendant chose not to call any witnesses.... Also, the defendant doesn't have to testify." *Graham* at 837–38.

(Mo.App. W.D.1994); *State v. Dunn,* 615 S.W.2d 543, 550 (Mo.App. E.D.1981). Accordingly, Appellant's first point is denied.

In his second point, Appellant argues that the evidence was insufficient to support a conviction for the felony of receiving stolen property in that it failed to establish beyond a reasonable doubt that the motorcycle was valued at $150 or greater at the time of the alleged crime.

■ In examining the sufficiency of the evidence supporting a conviction our review is limited to a determination of whether there is sufficient evidence from which a reasonable trier of fact might have found a defendant guilty beyond a reasonable doubt. *State v. Bonuchi,* 636 S.W.2d 338, 340 (Mo. banc.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *State v. Jenkins,* 776 S.W.2d 59, 62–63 (Mo.App. S.D.1989). We do not act as a "super juror" with veto powers over the jury but, instead, give great deference to the trier of fact. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc 1998) (quoting *State v. Grim,* 854 S.W.2d 403, 414 (Mo. banc 1993)). In performing our review, we accept as true all evidence favorable to the verdict, as well as inferences therefrom, and disregard all evidence and inferences to the contrary. *Id.*

Section 570.080 provides that a person commits the crime of receiving stolen property if, for the purpose of depriving the owner of a lawful interest therein, he "receives, retains or disposes of property of another knowing that it has been stolen, or believing that it has been stolen." This offense is a class A misdemeanor unless the property is valued at $150 or more, in which case it is a class C felony. Section 570.080.3. As to the temporal aspect of determining the property's value, Section 570.020.1 provides, in pertinent part, that " 'value' means the market value of the property at the time and place of the

crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime."

■ Halverson testified that she bought the new motorcycle in 1999 for $3500, that it was in nearly "perfect" condition when her son last drove the motorcycle prior to the accident in August 2000, and that her son said it had not been damaged "very much" in the accident. She also testified that, in March 2001, the approximate time she went to George's Towing to inspect the motorcycle, it appeared to be worth less than $200 and that she refused to give even $100 for its recovery. Halverson was not asked for, nor did she volunteer, her opinion concerning the value of the motorcycle on December 7, 2000, the date Appellant was found in possession of the motorcycle and when the crime of receiving stolen property was alleged in the charging information to have occurred.

■ It is generally true that a property owner may testify authoritatively to the value of stolen property, leaving the jury to determine the weight and sufficiency of such testimony. *State v. King,* 988 S.W.2d 663, 666 (Mo.App.E.D.1999); *Jenkins* at 62. However, Section 570.020 clearly states that "value" means market value *at the time and place of the crime,* in this case, December 7, 2000. The record before us is devoid of any direct evidence of the motorcycle's market value on that date, when the motorcycle was discovered at the Wilsons' home. Further, while Section 570.020 also provides for the determination of value by proving the "cost of replacement of the property within a reasonable time after the crime," this can only be done "*if* [market value at the time of the crime] cannot be satisfactorily ascertained" (emphasis added). *See State v.*

*Foster*, 762 S.W.2d 51, 53 (Mo.App. E.D. 1988). In any event, no evidence appears in the record regarding the replacement cost of the motorcycle and, even if such evidence had been adduced, there is "no basis for finding that the [motorcycle] could not have been appraised, or that evidence of [its] value at the time of the crime could not be satisfactorily ascertained." *Foster* at 53. Testimony from the owner of the motorcycle regarding its initial purchase price and the perceived "perfect" condition of the motorcycle before the accident "is too indefinite to constitute substantial evidence from which a jury could reasonably decide, beyond a reasonable doubt, that the market value of the [motorcycle] at the time and place of the crime was at least [$150]." *Woolford v. State*, 58 S.W.3d 87, 90 (Mo.App. E.D. 2001).

The same flaw applies to Halverson's testimony concerning the value of the motorcycle in March 2001, when she inspected it at George's Towing. At different points in her testimony, Halverson states the motorcycle "looked ... like it was worth two hundred dollars," that she told her son "it's not worth two hundred dollars," and that she "wouldn't give a hundred dollars for it." When pressed on the issue by Appellant's counsel, Halverson replied "—so what's two hundred, what's one hundred? Give me a break." The State, citing *Jenkins*, argues that "even if [Halverson's] testimony made her $200 valuation 'tentative and uncertain,' this would only go to the weight, and not the sufficiency of the evidence." However, in *Jenkins*, the estimation of value alleged to be "tentative and uncertain" was $400, and this court noted that "[h]ad [the owner] testified the market value of the [property] was approximately $150 the crucial sum in determining whether the [crime] was a felony or only a misdemeanor ... appellant's contention might be persuasive."

*Id.* at 63. What the *Jenkins* court posited as hypothetical is reality here; Halverson's testimony regarding the motorcycle's value in March 2001, even if it were pertinent to determining its value in December 2000, is too uncertain and too close to the $150 felony-misdemeanor threshold to establish reasonable grounds for proving the "value" element of the charged offense. "The [S]tate has the burden and must prove each and every element of a criminal case." *State v. Dixon*, 70 S.W.3d 540, 545 (Mo.App. W.D.2002) (quoting *State v. Smith*, 33 S.W.3d 648, 652 (Mo.App. W.D. 2000)). This court "will not support a conviction based on probabilities and speculation." *Woolford* at 90. There being insufficient evidence of value to sustain Appellant's conviction for the felony of receiving stolen property, that conviction must be, and is hereby, reversed.

However, our reversal of Appellant's conviction does not, in this case, mandate his discharge. When a conviction is overturned for want of sufficient evidence, we may enter a conviction for a lesser included offense if the evidence was sufficient to prove each element of that offense, and the trier of fact was required to find those same elements in order to convict for the greater offense. *State v. O'Brien*, 857 S.W.2d 212, 220 (Mo. banc 1993); *Woolford* at 90. A lesser offense is included in a charged offense when it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" Section 556.046.1. Here, the elements of misdemeanor receiving stolen property are identical to the elements of the felony version of that offense, except there is no need to prove the property's value to establish the misdemeanor. Sections 570.080.1; 570.080.3. Appellant makes no argument that the State failed to meet its burden in proving the remaining elements

of receiving stolen property. "An appellate remedy should extend no further than the scope of the wrong." *Woolford* at 90; *State v. Roe*, 6 S.W.3d 411, 417 (Mo.App. E.D.1999). Accordingly, we enter a conviction for the class A misdemeanor of receiving stolen property.

The judgment of conviction for the class C felony of receiving stolen property is reversed. We enter a conviction for the class A misdemeanor of receiving stolen property and remand the case to the trial court for resentencing.

MONTGOMERY, P.J., and BARNEY, J., concur.