

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED110314 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | 19SL-CR00368-01 |
| | ) | |
| ADAM CRAFT, | ) | Honorable Joseph Dueker |
| | ) | |
| Appellant. | ) | Filed:  June 13, 2023 |

Adam Craft appeals the judgment convicting him of statutory rape, four counts of statutory sodomy, one count of child molestation, and one count of sexual misconduct.  Craft asserts three points on appeal claiming the circuit court erred by failing to grant a mistrial when the State commented on his right to testify, excluding evidence and limiting his closing argument.  Because he has not demonstrated reversible error, we affirm the judgment.

**Factual and Procedural Background**

The sufficiency of the evidence is not in dispute.  Viewed in the light most favorable to the verdict, the record shows the following facts.  When she was eleven years old, Craft's daughter ("Victim") told her mother ("Mother") Craft had been using his hands and penis to touch her breasts, vagina, and bottom.  Mother took Victim to the hospital, where she underwent a sexual abuse examination.  Victim told the examiner Craft had touched her breasts and vagina.  The

physical examination findings were normal, but the evidence showed this was common even in cases involving vaginal penetration.

Several days later, a police detective interviewed Craft. Craft initially denied abusing Victim. The next day, while in jail, Craft requested to speak with the detective again. In the audiotaped interview that was played for the jury, he admitted he touched Victim's vagina and breasts, that he put his penis in her vagina and rectum, and that he put his penis in her mouth. During the interview, Craft said he was sorry, that he was not mad at Victim, and that he was disappointed with what he had done.

At trial, Victim testified Craft began abusing her when she was nine and that it happened "quite often," typically when her mother was not home. Consistent with Craft's confession, she testified he put his penis in her vagina and rectum. She testified Craft would usually stop when Victim's siblings entered the room where he was with Victim or when her mother returned from work.

Craft testified at trial and denied all of the allegations. He testified he did not remember the specifics of his confession because he was mentally compromised as a result of high blood sugar caused by diabetes. Craft testified he "felt out of body" during the interview and "did not understand a word [the detective] was saying."

The jury acquitted Craft of one count of statutory sodomy but convicted him on all remaining counts. Craft appeals.

**Point I: Defendant's Right Not to Testify**

Craft claims the circuit court erred by failing to grant a mistrial when, during voir dire, the State commented on his right not to testify in violation of his rights under the Fifth Amendment to the United States Constitution and Article I, section 19 of the Missouri Constitution. The decision

2

to grant or deny a mistrial is "left to the discretion of the trial court, as it is in the best position to determine whether the incident had a prejudicial effect on the jury." *State v. Blurton*, 484 S.W.3d 758, 779 (Mo. banc 2016). "A trial court abuses its discretion to grant a mistrial only if its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration." *Id*.

The Fifth Amendment and Article I, section 19 establishes a criminal defendant's right not to testify. *State v. Neff*, 978 S.W.2d 341, 344 (Mo. banc 1998). The defendant's exercise of that right shall not "be referred to by any attorney in the case[.]" Section 546.270; Rule 27.05(a). This prohibition applies to the entire trial, including voir dire. *State v. Chaddock*, 280 S.W.3d 164, 166 (Mo. App. S.D. 2009). The purpose of the rule is "to avoid focusing the jury's attention upon a defendant's failure to testify." *Neff,* 978 S.W.2d at 344. While recognizing the defendant's right not to testify is fundamental, Missouri courts also recognize "[g]ranting a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudice to the defendant cannot be removed any other way." *State v. Davis*, 533 S.W.3d 853, 863 (Mo. App. W.D. 2017); *see also State v. Boyd*, 91 S.W.3d 727, 731 (Mo. App. S.D. 2003). Assessed against these standards, the record shows the circuit court did not abuse its discretion by declining to grant a mistrial.

During voir dire, the prosecutor told the panel the law allows the State to prove its case beyond a reasonable based on the testimony of a single credible witness. The prosecutor also stated he wanted to "make sure that everyone here is okay with that and can follow the Court's instructions on that." The prosecutor further discussed the issue with two venirepersons, both of whom stated they understood the State could meet its burden of proof with the testimony of a

single credible witness.  When a third venireperson indicated he wanted further clarification, the following exchange occurred:

> [VENIREPERSON]: So if somebody comes in, and they testify for the prosecution, and they're believable...
>
> [STATE]: Uh-huh. Yes.
>
> [VENIREPERSON]: And then the defendant testifies and is believable...
>
> [STATE]: Yes.  Yes.  So that is where the jury will have to make a determination as to whether or not they find one witness more credible than the other.  And if you have, let's say some scenario like that happens, and you have reasonable doubts, the benefit of those doubts go to the defendant, all right, and then your verdict must be not guilty.
>
> But let's say -- sorry, not done with you yet.  But let's say that I put on a witness, and that witness, you know, leaves you firmly convinced as to each and every element, and there is not a reasonable doubt in your mind, would you be able to find the defendant guilty?
>
> [VENIREPERSON]: I think so.
>
> [STATE]: Think so?
>
> [VENIREPERSON]: But you're only giving us half of the picture.
>
> [STATE]: He doesn't have to do anything. The burden is on me, so I'm the one that has to present witnesses' testimony and evidence. And, like I said, I anticipate more than one witness –
>
> [VENIREPERSON]: So if the defense does nothing, then in that case, yes.
>
> [STATE]: However, and ***I anticipate defense counsel will talk about this, as well, under the law, the defendant has the right not to testify*** –
>
> [DEFENSE COUNSEL]: Your Honor, I'm going to object.  Can we approach?
>
> [THE COURT]: Yes.

(Emphasis added).

During the sidebar, defense counsel specifically objected to the prosecutor's comment and moved for a mistrial on grounds "the prosecution is never supposed to mention anything about the

4

defendant's right not to testify[.]" The circuit court declined to grant a mistrial, noting the venireperson raised the issue "and initiated any kind of context of the defendant's right to testify or not to testify." The court then asked defense counsel if he wanted an instruction advising the jury to disregard the comment or whether he wanted to ignore it and move on. After discussing the matter with prosecutor and the court, defense counsel told the court "however you want to handle it is fine with me" and agreed to clarify the issue during the defense voir dire.

Craft argues this case is indistinguishable from *State v. Lindsey*, 578 S.W.3d 903 (Mo. banc 1978), in which the Court held the State's direct comment during voir dire on the defendant's right not to testify required reversal. While conceding the prosecutor erroneously made a direct comment on Craft's right not to testify, the State argues *Lindsey* does not require reversal in every case involving an erroneous direct comment on the defendant's right not to testify. We agree.

In *Lindsey*, the prosecutor, during voir dire, stated: "Mr. Lindsey doesn't have to go forward with any evidence if he doesn't wish to. He doesn't have to take the stand if he doesn't want to." *Lindsey*, 578 S.W.2d at 903. *Lindsey* held:

> We believe and hold that the … language used by the Assistant Prosecuting Attorney was of such character that the jury would naturally and necessarily be influenced so as to deny appellant a fair trial. Conduct which naturally and necessarily has the effect of denying an accused a fair trial can never be harmless.

*Id*. at 904.

Craft's argument the prosecutor's comments in this case are indistinguishable from those in *Lindsey* overlooks subsequent cases which further refine the analysis. In *Neff*, the defense counsel moved for a mistrial after the prosecutor, while objecting to the defendant's closing argument in the presence of the jury, commented that the defendant "didn't take the stand." *Neff*, 978 S.W.2d at 342–343. Rather than declaring a mistrial, the circuit court admonished the jury to disregard the comment. *Id*. at 344. The Court affirmed the judgment, prefacing its analysis by

emphasizing that section 546.270, first enacted in 1877, "does not mandate a mistrial in every case where there is a reference, direct or otherwise, to a defendant's failure to testify." *Id*. at 344. The Court further observed it had never "held that a direct reference always requires a mistrial." *Id*. Thus, the Court concluded "[n]o sound historical argument, rooted in the statute or the precedent of this Court, supports the sweeping claim that regardless of the circumstances, a direct reference to the defendant's failure to testify mandates a mistrial." *Id*. at 344–45. Finally, the Court directed appellate courts to "consider the comment in the context in which it appears" while recognizing "[t]he prejudicial impact of such a statement is a matter within the sound discretion of the trial court and a prompt instruction by the trial court to the jury to disregard the comment may cure any error in a particular case." *Id*. at 345.

Two years later, in *State v. Barnum*, 14 S.W.3d 587 (Mo. banc 2000), the Court again addressed the issue of improper commentary on the defendant's right not to testify. The Court reiterated its observation in *Neff* that it "has never held that a mistrial is always required after a direct reference by an attorney to a defendant's right to testify." *Barnum*, 14 S.W.3d at 592 (citing *Neff,* 978 S.W.2d at 344–45). The Court further observed that whether "a particular improper argument is so prejudicial under the facts in a particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial court." *Id*. With these principles in mind, the Court analyzed the following comment made by the prosecutor during voir dire:

> The second term that we talk about probably endlessly and to the point that you're all tired of it is the burden of proof. And that's the idea that it's up to me to prove to you that the Defendant did what we charged. It's not up to the Defendant to prove anything. The Defendant doesn't have to present any evidence, doesn't have to testify, and that's our legal system. That's the way it works in our legal system.

6

*Id.* at 592. The Court concluded "[t]hese remarks did not pertain to Appellant's failure to testify but were merely restatements of the law and general comments concerning the rights of any defendant in a criminal trial" and held the circuit court did not plainly err in denying the defendant's motion for a mistrial. *Id.* Critically, the Court further observed "*Lindsey* should not be read to imply that any general statement of the law, such as occurred here, must always be considered prejudicial to a defendant." *Id.*[1]

Considered in light of the Court's more recent decisions in *Neff* and *Barnum*, the prosecutor's comments in this case, while erroneous, do not constitute reversible error. First, similar to *Barnum*, viewing the comments in context shows the prosecutor referred to the right not to testify while explaining the State's burden of proof and asking whether the panel could conclude the State met its burden with a single credible witness. A venireperson answered "if the defense does nothing, then in that case, yes" he could find the State met its burden of proof with a single credible witness. This answer implied the venireperson was prepared to draw an adverse inference if Craft declined to testify. It was only then that the prosecutor stated "I anticipate defense counsel will talk about this, as well, under the law, the defendant has the right not to testify." As in *Barnum*, these comments when viewed in context were "restatements of the law and general comments concerning the rights of any defendant in a criminal trial." *Barnum*, 14 S.W.3d at 592.

---

[1] This Court recognizes the manifest injustice standard applied in *Barnum* imposes a higher bar for reversal than in cases involving a preserved claim of error. *See State v. Morgan*, 366 S.W.3d 565, 582 (Mo. App. E.D. 2012) (noting manifest injustice is "a higher bar than prejudice"). Thus, the fact *Barnum* held there was no plain error means it cannot be absolutely dispositive in this case. Nonetheless, *Barnum* is still instructive because whether reviewed for plain error or prejudice, the defendant's right not to testify remains the same and this Court must analyze the prosecutor's comments in the context of the case to determine if a mistrial was warranted. *Neff*, 978 S.W.2d at 345. Further, the fact *Barnum* reviewed the record through the lens of plain error had no bearing on the Court's unequivocal recognition that neither *Lindsey* nor any other provision of Missouri law requires a mistrial in all cases. Finally, the application of plain error review does not lessen the similarity between the prosecutor's statements in this case and those in *Barnum*, which the Court characterized as "restatements of the law and general comments concerning the rights of any defendant in a criminal trial." *Barnum*, 14 S.W.3d at 592. Therefore, while *Barnum* is not dispositive in this case, it is nonetheless highly relevant to the analysis.

Second, relying exclusively on *Lindsey*, Craft argues a mistrial is the only option while overlooking binding precedent holding "the prejudice from such comments can normally be cured by an instruction to the jury." *Neff*, 978 S.W.2d at 345 (internal quotation omitted). Although defense counsel requested a mistrial, the record shows that during the sidebar discussion the circuit court offered to "advise the jury to disregard." Defense counsel did not accept this invitation and, after additional discussion told the court "however you want to handle it is fine with me" before agreeing to clarify the issue during the defense voir dire. "The fact that a defendant limits his request for relief to that of a mistrial rather than making a request for a less drastic corrective action cannot aid him." *State v. Eaton*, 563 S.W.3d 841, 846 (Mo. App. E.D. 2018) (internal quotation omitted); *see also State v. Salazar*, 414 S.W.3d 606, 620 (Mo. App. S.D. 2013) (noting granting "a mistrial is a drastic action that should only be taken in those circumstances where no other curative action would remove the alleged prejudice suffered by the defendant").

Third, consistent with counsel's decision to forego a curative instruction or admonition, he asked venirepersons during the defense voir dire whether they would hold Craft's failure to testify against him. No juror indicated they would. The fact each juror acknowledged under oath they would not use a decision not to testify against him is a relevant factor. *See State v. Davis*, 533 S.W.3d 853, 864 (Mo. App. W.D. 2017) (noting the defense voir dire may mitigate prejudice).

Considered in context, Craft has not shown the circuit court abused its discretion by declining to grant a mistrial based on the prosecutor's brief, isolated comment. The foregoing analysis is not an endorsement of the prosecutor's comments. If the circuit court had made no effort to remediate the situation, then the result may have been different. *Neff*, 978 S.W.2d at 347. On this record, however, "we cannot say the trial court acted capriciously or without careful

8

consideration in deciding to address the disputed remarks as it did." *Id*. The circuit court did not abuse its discretion under the circumstances of this case. Point I is denied.

## Point II: Offer of Proof

Craft claims the circuit court abused its discretion by excluding his father's testimony regarding his observations of Craft's diabetic symptoms. Craft argues his father's testimony would corroborate Craft's testimony that his diabetes caused him to falsely confess to sexually abusing Victim after initially denying the allegations.

The circuit court's decision to admit or exclude evidence is reviewed for abuse of discretion. *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015). "Evidentiary error is reviewed for prejudice, not mere error, and error is only prejudicial if the court's error affected the outcome of the trial with reasonable probability and deprived the defendant of a fair trial." *Id*. (internal quotation omitted).

Prior to trial, the circuit court ruled Craft could not present his father's testimony regarding his diabetic symptoms. During the trial, Craft made an offer of proof with his father's testimony. Craft's father testified Craft was diagnosed as a diabetic at age 23 and he had witnessed the diabetic symptoms three or four times. He testified Craft would become lethargic, glassy-eyed, and uncooperative as if "he's not there almost."

Evidence is admissible if it is both logically and legally relevant. *Taylor*, 466 S.W.3d at 528. "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id*. (internal quotation omitted). "Logical relevance is a very low threshold." *Kappel v. Prater*, 599 S.W.3d 189, 193 (Mo. banc 2020) (internal quotation omitted). "Once logical relevance is established, legal relevance weighs the probative value of the evidence against

9

its costs—unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id*. (internal quotation and brackets omitted).

Here, the offer of proof meets the low threshold of logical relevance. Craft's argument centers on a disputed factual assertion his diabetic symptoms compromised him mentally, leading to a false confession. His father's testimony that on three or four occasions, he observed Craft become lethargic, glassy-eyed, and uncooperative as if "he's not there almost" is evidence of symptoms that could be associated with decreased mental acuity. Of course, the testimony indicating Craft would become uncooperative cuts against his argument his diabetic symptoms caused him to cooperate with the police to such an extent that he gave a false confession to charges he repeatedly sexually abused his own daughter. Nonetheless, even to the extent it is unfavorable, his father's testimony had at least some minimal tendency "to make the existence of a material fact more or less probable." *Taylor*, 466 S.W.3d at 528.

Nonetheless, even if the offer of proof was also legally relevant, the State has demonstrated the circuit court's exclusion of the testimony was not prejudicial. The State's rebuttal witness, Dr. Miller, testified mental confusion from diabetes-induced high blood sugar typically occurs when the patient is in a medical crisis. She testified Craft's blood sugar reading at the jail was 212, which is in the normal range for a diabetic. Further, Craft's medical intake form indicated he had normal mental functioning. Most importantly, the jury heard the audio recording of Craft's confession in which he communicated with no apparent problem, answered questions fully, and corrected the detective when he believed she misspoke. On this record, there is no reasonable probability the circuit court's exclusion of the testimony in the offer of proof would have materially affected the outcome and deprived Craft of a fair trial. *Taylor*, 466 S.W.3d at 528.

10

**Point III: Closing Argument**

Craft claims the circuit court erred by prohibiting him from using the State's Exhibit 5 during closing argument to argue that while Victim testified she showered before her sexual assault examination, the report generated from that examination indicated she had not showered. He argues he was prejudiced by the circuit court's decision because he was prevented from contesting the DNA evidence and attacking Victim's credibility.

The circuit court retains broad discretion to control closing arguments. *State v. Perkins*, 656 S.W.3d 285, 299 (Mo. App. E.D. 2022). "Although courts are to be careful to refrain from unduly restricting closing arguments, they have the power to confine the arguments to issues raised by the pleadings and the evidence." *Id.* (internal quotation omitted). "Closing argument grants each side the opportunity to highlight the evidence that was presented." *State v. Walter*, 479 S.W.3d 118, 125 (Mo. banc 2016). It follows that "[a] party may argue inferences justified by the evidence, but not inferences unsupported by the facts." *Perkins*, 656 S.W.3d at 299. A closing argument requires reversal only if it amounts to prejudicial error. *Id.* When a claim regarding closing argument is preserved, the circuit court's ruling is reviewed for an abuse of discretion and reversal is warranted only if the "defendant was prejudiced to the extent that there is a reasonable probability that the outcome at trial would have been different if the error had not been committed." *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2010).

At the close of evidence, and prior to closing arguments, defense counsel indicated he intended to argue Victim's testimony she showered prior to undergoing the sexual assault examination was inconsistent with the rape kit report included in the State's Exhibit 5. Specifically, the rape kit report indicated Victim urinated, but did not indicate she showered, thus creating a potential inconsistency between Victim's testimony and the report. The State objected,

asserting that although Exhibit 5 was admitted into evidence, it was never published to the jury and neither party elicited any testimony regarding whether the report indicated Victim had not showered prior to the examination. The circuit court sustained the State's objection and prevented Craft from using Exhibit 5 in closing argument to address Victim's testimony she showered prior to the examination.

Craft's argument fails because he cannot demonstrate prejudice. First, Craft notes he presented evidence showing two vaginal swabs failed to detect male DNA but an external genital swab showed the presence of male DNA. He asserts, with no additional detail, that these results would be "expected had Victim showered" before the examination but "would be unexpected had she not showered." The import of this assertion appears to be that the evidence Victim did not shower, combined with the fact his DNA was not detected, tends to show his innocence. However, Victim never testified Craft ejaculated in her vagina. Moreover, in his audiotaped confession, Craft effectively corroborated Victim's testimony by stating he did not ejaculate in the victim's vagina. Given this record, whether Victim showered was not likely to impact the jury's verdict.

Second, Craft asserts his closing argument would have cast serious doubt on Victim's credibility by allowing the jury to contrast her testimony she showered before the examination with the information contained in Exhibit 5 that she did not shower. Craft's argument is speculative at best. Since Craft did not cross examine any witness about the inconsistency between the contents of the rape kit report and Victim's testimony and did not establish that Victim provided inconsistent testimony, we cannot find the circuit court abused its discretion by disallowing defense counsel from arguing in closing argument the rape kit report included in State's Exhibit 5 was inconsistent with Victim's trial testimony. Given the record before us, Craft has not shown

12

and we do not find the circuit court committed prejudicial error by limiting his closing argument.

Because we find that the circuit court did not abuse its discretion, Point III is denied.

## Conclusion

We affirm the circuit court's judgment.

_____
Renée Hardin-Tammons, Judge

Lisa P. Page, P.J. and
Thomas C. Clark, II, J., concur.