STATE of Missouri, Respondent,

v.

Charles E. COLLINS, Appellant.

No. WD 58051.

Missouri Court of Appeals,
Western District.

Feb. 6, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2001.

Application to Transfer Denied
May 29, 2001.

Andrew A. Schroeder, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrea Mazza Follett, Asst. Atty. Gen., Jefferson City, for repsondent.

Before BRECKENRIDGE, P.J., ULRICH and HOWARD, JJ.

BRECKENRIDGE, Judge.

A jury convicted Charles Collins of one count of trafficking in the first degree. The court sentenced him to nineteen years' imprisonment. Mr. Collins appeals, claiming that the trial court plainly erred in allowing the State to mention during voir dire that he had the right not to testify. Because this court finds that Mr. Collins did not suffer manifest injustice as a result of the State's remarks, the judgment of the trial court is affirmed.

**Factual and Procedural Background**

In April 1997, officers from the Kansas City, Missouri, Police Department executed an eviction on the south half of a duplex. Inside, the officers found the person renting the duplex, Angelou Meyers, asleep on the couch in the living room.

The living room floor was littered with used hypodermic syringes, a handgun, a rifle, and shotgun ammunition. The officers proceeded to one of the bedrooms, where they found Mr. Collins and his girlfriend, Laura Carullo, asleep on a mattress. The mattress was surrounded by used hypodermic syringes, and there was handgun ammunition on one side of the mattress. The officers escorted Mr. Meyers, Mr. Collins, and Ms. Carullo from the dwelling.

Once outside, the officers asked Mr. Collins his name, and he gave them an alias. The officers checked the alias on the computer, and found that he had outstanding municipal warrants for his arrest. An officer then arrested Mr. Collins, and was attempting to put him in the squad car when Mr. Collins broke free and ran into a wooded area nearby. The officer eventually caught up with Mr. Collins, and after a struggle, Mr. Collins was apprehended.

Meanwhile, other officers searched the dwelling. In the freezer, the officers found three Mason jars filled with what was later determined to be liquid methamphetamine. In the bedroom where Mr. Collins and Ms. Carullo were sleeping, the officers found a pile of papers that included a list of chemicals and utensils, a recipe for the manufacture of methamphetamine, and a card with the name "Charles Collins" on it. The officers also found in that room, in addition to the used hypodermic syringes, a pill bottle containing a white, powdery substance that was later identified as methamphetamine; a green, leafy substance that was later determined to be marijuana; a marijuana cigarette; and some type of fuel used in the manufacture of methamphetamine.

In the basement of the dwelling, the officers found chemicals and equipment used in the manufacture of methamphetamine, and determined that it was a working methamphetamine laboratory. Based upon its size, one of the officers with the drug enforcement unit estimated that the lab ranked within the top ten percent of the approximately two hundred methamphetamine laboratories he had processed for the Kansas City, Missouri, Police Department. From the thirty items seized from the residence, five tested positive for methamphetamine. The total weight of the methamphetamine found in those five items was 17,225.04 grams.

Mr. Collins was subsequently charged with one count of trafficking in the first degree, in violation of § 195.222, RSMo 1994.[1] A trial was held December 14–18, 1998. At trial, one of the State's witnesses was Ms. Carullo. Ms. Carullo testified that in the approximately two weeks that she and Mr. Collins lived with Mr. Meyers prior to Mr. Collins' arrest, she knew of at least two times that Mr. Collins, Mr. Meyers, and another man, Carl Driskill, manufactured methamphetamine in the basement of the residence. Additionally, Ms. Carullo was with Mr. Collins when he purchased some of the ingredients used in the manufacturing process.

Mr. Collins did not testify, but he did present the testimony of six witnesses on his behalf. The jury convicted Mr. Collins. The court sentenced him to nineteen years' imprisonment. Mr. Collins filed this appeal.

■ The State asserts that this court should apply the escape rule to dismiss Mr. Collins' appeal because he failed to appear in court for his April 2, 1999, sentencing, and the fugitive unit of the police department was unable to apprehend him until June 23, 1999, after a struggle with one of the officers. "The escape rule oper-

---

1. All statutory references are to the Revised Statutes of Missouri 1994.

ates to deny the right of appeal to a defendant who escapes justice." *State v. Troupe*, 891 S.W.2d 808, 809 (Mo. banc 1995). While the State's assertion may have merit, this court chooses to exercise its discretion and review Mr. Collins' point on appeal. *Id.* at 811 n. 3.

### No Manifest Injustice in the State's Mentioning in Voir Dire a Defendant's Right Not to Testify

In his sole point, Mr. Collins claims that the trial court plainly erred in allowing the State to mention in voir dire that Mr. Collins did not have to testify. During the State's questioning of the venire panel, the prosecutor informed the jury that the State, and not the defendant, has the burden of proof, and the defendant does not have to put on any evidence. She then asked if anyone on the venire panel would expect the defendant to present evidence. Two members of the panel responded that they would expect the defendant to put on evidence. After one of the panel members said that he "always had the assumption that both sides had to say their part," the prosecutor said, "So now that you know the Defendant doesn't have to say a word ..." The venireperson interrupted and said, "Now that I know, I'm fine with it."

Moments later, one of the venirepersons told the prosecutor, "If he is not going to argue for himself, we would tend to lean more towards what you're saying as absolute if he doesn't fight for himself." In response, the prosecutor stated the following:

> [PROSECUTOR]: That's what I'm asking you. Is that what you're going to do? Because the Defendant doesn't have to open his mouth. They probably will and there will probably be some evidence, but he doesn't have to. That's the way the system is. And I want to know. We're talking globally about this

system, about your feeling about it, not for this particular case.

After the venireperson replied, "Well, if he's not going to say anything to defend himself," defense counsel asked to approach, and the following exchange was had:

> [DEFENSE COUNSEL]: Your Honor, I think at some point we're getting into the Defendant's right not to testify. And I think what [the prosecutor] is doing is tainting this jury with regards to whether or not the Defendant will or will not testify. And it's obvious, at least that's the way the jurors are taking this, because the jurors are answering if he is not going to say anything on his behalf and so—
>
> [PROSECUTOR]: It didn't start that way.
>
> THE COURT: I truly don't think that was her intent. We've gotten into a little problematic area. And I think you intend to ask questions in this area yourself.
>
> [DEFENSE COUNSEL]: Absolutely. And for the record, I'm not saying that I object that [the prosecutor] brought that out. I think this is just the way this is going.
>
> THE COURT: I would suggest that the way to get out of this problem is for [the prosecutor] to suggest this, is to ask a general question to this effect, that the law is that the Defendant does not have to put on any evidence. And if he chooses not to testify, he does not have to testify. Is there anyone on the jury panel who, if instructed that way, could not follow that instructions. And then do that and let's get on to something else. The reason to do that is for the fact that, if we get into the problem of the Defendant's own making, it's a whole different situation. So I ... suggest we solve it in that fashion.

(The proceedings returned to open court.)

[PROSECUTOR]: I think I can ask a general clarifying question. The law in this case and the law as given to you by the Judge will be that the Defendant does not have to put on any evidence. Is there anyone here who disagrees with that law, that principle of law?

After receiving a response, the prosecutor asked this follow-up question:

[PROSECUTOR]: If the Judge gave you an instruction that said you cannot consider the fact that they did not put on any evidence or that he did not testify in determining his guilt, would you be able to follow that instruction of law?

■ The only remarks Mr. Collins now claims that the trial court should not have allowed the prosecutor to make were that the defendant "doesn't have to say a word" and "doesn't have to open his mouth." Because he did not object to these statements at trial and did not raise them in his motion for new trial, he requests plain error review pursuant to Rule 30.20. Plain error relief is appropriate only if this court determines that Mr. Collins has suffered a manifest injustice or a miscarriage of justice as a result of the alleged error. *State v. Spidle*, 967 S.W.2d 289, 292 (Mo. App.1998).

■ Under the United States and Missouri Constitutions, § 546.270, and Supreme Court Rule 27.05(a), a criminal defendant has the right not to testify, and all parties are prohibited from commenting on the defendant's decision to exercise that right. *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000). In fact, under § 546.270, "it is error to allude, either directly or indirectly, to a defendant's failure to testify on his own behalf." *Id.* at 592. This prohibition applies to the entire trial, including during voir dire. *Id.* Nevertheless, an attorney's direct reference to

a defendant's right not to testify does not automatically require that the trial court declare a mistrial. *Id.* The trial court has discretion to determine whether a particular comment is so prejudicial that a mistrial or a reprimand of counsel is required. *Id.*

In *Barnum*, the Supreme Court determined that the prosecutor's direct reference in voir dire to a defendant's right not to testify did not entitle the defendant to plain error relief. *Id.* The prosecutor's remarks in *Barnum* were:

The second term that we talk about probably endlessly and to the point that you're all tired of it is the burden of proof. And that's the idea that it's up to me to prove to you that the Defendant did what we charged. It's not up to the Defendant to prove anything. The Defendant doesn't have to present any evidence, doesn't have to testify, and that's our legal system. That's the way it works in our legal system.

The Court held that these remarks were not specifically referring Mr. Barnum's failure to testify, "but were merely restatements of the law and general comments concerning the rights of any defendant in a criminal trial." *Id.* The Court considered the entire record, and determined that "due to the nature of the remarks and the stage of the trial at which they were made," no manifest injustice resulted. *Id.*

■ Here, as in *Barnum*, the prosecutor's remarks regarding the defendant's right not to testify were made during the prosecutor's general discussion of the burden of proof in criminal cases. The first comment, that the defendant "does not have to say a word," was made only after a venireperson responded to the prosecutor's comment that the defendant did not have to produce evidence by stating that he assumed "that both sides had to say their part." As for the second remark,

that the defendant "doesn't have to open his mouth," the prosecutor specifically put the comment in the context of the legal system in general by explaining that that was the way the legal system was, and she wanted to know the venire panel's feelings "globally about this system," and "not for this particular case."

When defense counsel then expressed his concern to the court about the direction the discussion was leading based upon the venire panel's answers, but specifically stated that he was not objecting to the prosecutor's questions, the court proposed that the prosecutor end the discussion by asking a general question as to whether the venire panel could follow the court's instruction that the jury could not consider the defendant's failure to offer evidence or testify. The court stated that the reason it was proposing such a question to end the discussion was to make sure that the discussion did not get into the subject of "the Defendant's own making," meaning Mr. Collins' particular decision not to testify. Thus, the trial court did not find that the discussion, up to that point, had become particular to Mr. Collins' decision not to testify.

The record indicates that the trial court did not abuse its discretion in finding that the prosecutor's comments regarding the defendant's right not to testify were not particular to Mr. Collins' decision not to testify. The prosecutor's statements that the defendant "doesn't have to say a word" and "doesn't have to open his mouth" were made in the context of a discussion about the rights of a defendant in general in a criminal trial, and thus were similar to those made by the prosecutor in *Barnum*, 14 S.W.3d at 592. Moreover, although defense counsel specifically stated that he was not objecting to the prosecutor's questions, the court proposed that the prosecutor end her discussion in this area by asking generally whether the venire panel

would be able to follow the court's instruction that it could not consider the defendant's failure to produce evidence or failure to testify. Defense counsel did not object to the proposed question.

■ It was error for the prosecutor to refer to a defendant's right not to testify, but the erroneous reference must be sufficiently prejudicial to entitle the defendant to a mistrial or a reprimand of counsel. *Id.* In light of the context in which the prosecutor's comments were made, this court cannot say that Mr. Collins suffered a manifest injustice or a miscarriage of justice as a result of the comments. This is particularly true considering the stage of the trial at which the comments were made. *See id.*

The judgment of the trial court is affirmed.

All concur.