**STATE of Missouri, Respondent,**

v.

**Krystal Ann STITES, Appellant.**

**No. 28569.**

Missouri Court of Appeals, Southern District, Division One.

July 22, 2008.

Motion for Rehearing or Transfer Denied Aug. 11, 2008.

Class A felony of second degree murder, a violation of section 565.021; one count of the unclassified felony of armed criminal action, a violation of section 571.015; and one count of the Class D felony of tampering with physical evidence, a violation of section 575.100.[1] Appellant was sentenced to concurrent terms of twenty-five years in the Missouri Department of Corrections for second degree murder, twenty years for armed criminal action, and one year for tampering with physical evidence. Appellant asserts three points of trial court error. We affirm the judgment of the trial court.

Appellant does not challenge the sufficiency of the evidence to support her convictions, thus we shall recite only those facts necessary for disposition of her points relied on. Viewing the evidence in the light most favorable to the jury's verdict, *State v. Tinsley*, 143 S.W.3d 722, 726 (Mo.App.2004), at approximately 5:00 p.m. on August 3, 2004, Casey Gunn ("Ms. Gunn"), a 911 operator and dispatcher for the Lawrence County Sheriff's Department, received an emergency call from Melissa Earle ("Victim"), who stated "a relative" "shot [her] several times" with "a BB gun" in the "neck, stomach, leg [and] knees. . . ."

Irene Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Kennedy, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERT S. BARNEY, Judge.

Krystal Ann Stites ("Appellant") appeals her conviction by a jury of one count of the

Carl Eutsler, a volunteer firefighter with the Marionville Rural Fire Department, received a call relating to the shooting and proceeded to Victim's address. At that location, there were two house trailers: a gray trailer where Victim resided ("Victim's trailer") and a white trailer where Appellant resided ("Appellant's trailer").[2]

---

1. All statutory references are to RSMo 2000.

2. Apparently Victim's trailer was owned by Sylvia Liscum ("Ms. Liscum"), Victim's aunt and Appellant's grandmother, and Victim resided there with Ms. Liscum. Appellant, who was seventeen years old at the time of the shooting, resided in the white trailer with her mother, Darlene Stites ("Mother"), and her ten-year-old brother. Victim and Appellant were second cousins.

Upon arriving, Mr. Eutsler observed blood on the walkway, steps, and front porch of Victim's trailer and he heard someone calling for help and moaning from inside the trailer. He discovered the trailer doors were locked and he forcibly entered the trailer with a pry bar. Once inside Victim's trailer, he found a blood trail from the front door through the kitchen to the living room where he found Victim lying on the floor covered in blood.

An ambulance arrived and Beverly Morris ("Ms. Morris"), a paramedic and registered nurse, attended to Victim's injuries. Ms. Morris found Victim's breathing to be shallow and she observed a " 'gaping wound to [Victim's] right lower leg ...;" her "legs [were] covered in dried blood ...;" she had a "gunshot wound to the chest ...;" and there were open wounds on the "right side of [Victim's] cheek, jaw, neck ...,' " which were injuries inconsistent with Victim's statement that she had been shot with a BB gun. The St. John's flight-line helicopter landed on the scene and the flight paramedic and nurse offered assistance to Victim. Shortly thereafter Victim lost consciousness, ceased breathing, and passed away.

Deputy Mike Madewell ("Deputy Madewell") and Deputy Robert Mobley ("Deputy Mobley") with the Lawrence County Sheriff's Department arrived on the scene at approximately 5:30 p.m. While canvassing bystanders for information relating to the shooting, Deputy Mobley made contact with a gentleman who pointed him toward Appellant's trailer where Appellant and Mother were sitting on the steps. When Deputy Mobley asked Mother if she had any information about the shooting, Mother looked at Appellant, who "nodded affirmatively" to Deputy Mobley. He asked Appellant several questions and "[s]he began mumbling kind of incoherently." Appellant then told Deputy Mobley that Victim "had come to her house with a gun. Stated that she believed that—or she thought that her and [Victim] were getting along. She stated that she dodged bullets, or a bullet." When Deputy Mobley asked Appellant what happened to the gun, "[s]he stated that she did not know where it was at." [3] Deputy Mobley then escorted her to his patrol vehicle and advised her of her *Miranda*[4] rights. Appellant requested to speak with an attorney and Deputy Mobley placed her in handcuffs in order to secure her in the back of his patrol vehicle.

Deputy Madewell and Deputy Mobley then spoke to Mother, who gave them permission to search her trailer for a weapon. Upon entering Appellant's trailer, the deputies saw "shell casings on the threshold" and as they walked toward the back of the trailer they saw "blood on the floor." In the back bedroom they found several unspent rounds of ammunition on the ground; a shell casing on the bed; five .38 caliber bullets that had been fired; a pool of blood on the floor; and blood on the wall beneath a window that had been broken outwards. They also observed a bullet hole in the ceiling of the living room; blood on the outside of the trailer; blood on the ground outside the trailer; and blood leading between the two trailers.

Thereafter, Officer Mobley transported Appellant to the Lawrence County Jail. Gun powder residue tests were performed on both Victim and Appellant. Victim's hands tested negative for gun powder residue but the tests on Appellant's hands revealed elevated levels of barium and lead. Appellant's socks and shoes, which were seized from her upon arrest, tested

---

3. The gun was never recovered.

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

positive for Victim's blood and the blood found inside and outside Appellant's trailer was determined to be that of Victim. The medical evidence revealed that Victim was shot from several feet away and that she died from five gunshot wounds. Also, there was evidence that the first two shots discharged were most likely fired while Victim had her back turned to Appellant. Further, the third shot was consistent with a defensive wound, and there was evidence Victim may have raised her arm in front of her face or attempted to grab the gun away from Appellant.

At the close of evidence, the jury found Appellant guilty of the crimes set out above and she was sentenced as previously stated. This appeal followed.

In her first point relied on, Appellant asserts the trial court committed plain error by refusing to *sua sponte* declare a mistrial in that Deputy Mobley "testified that [Appellant] asked for an attorney, because the testimony was an impermissible comment on [Appellant's] post-*Miranda* silence...." Appellant maintains that because the jury was advised "that [Appellant] chose to exercise her right to silence and her right to the assistance of counsel" the jury was prejudiced such that only a mistrial "could cure the prejudice of learning that [Appellant] asked for an attorney and chose not to talk to [Deputy] Mobley because it created an inference of guilt."

■■■ Appellant did not properly preserve this point relied on for appellate review in that she failed to object at trial or include this allegation in her motion for new trial. *See* Rule 29.11(d).[5] Therefore, she requests plain error review under Rule 30.20. Claims of plain error are reviewed "under a two-prong standard." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App.2004). "In the first prong, we determine whether

there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" *Id.* (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo.App.1999)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.* "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Id.* "The outcome of plain error review depends heavily on the specific facts and circumstances of each case." *Id.*

■■■ "Our review for plain error of a trial court's failure to *sua sponte* declare a mistrial is extremely limited." *State v. Collins*, 150 S.W.3d 340, 349 (Mo.App. 2004). We are mindful that a mistrial is a drastic remedy that should be used sparingly and granted only in extraordinary situations. *State v. Clover*, 924 S.W.2d 853, 856 (Mo. banc 1996). Moreover, "'*sua sponte* action should be exercised only in exceptional circumstances.'" *Collins*, 150 S.W.3d at 349 (quoting *State v. Drewel*, 835 S.W.2d 494, 498 (Mo.App. 1992)).

At trial, Deputy Mobley testified that on the day of the shooting he spoke to Appellant and Mother on the steps of Appellant's trailer. He recounted Appellant told him that Victim had been at her house with a gun, "she [had] dodged bullets ...," and she did not know what happened to the gun. The following exchange then took place:

The Prosecutor: All right. What did you do next?

Deputy Mobley: At that point, I escorted her over to my patrol car and Mirandized her.

5. All rules references are to Missouri Court Rules (2007).

The Prosecutor: All right. Once you had Mirandized her what did you do?

Deputy Mobley: I handcuffed her and placed her in the back of my patrol car.

The Prosecutor: Did you ask her any more questions?

Deputy Mobley: She requested to speak to an attorney.

Defense counsel made no objection to this testimony and the Prosecutor moved on to a different line of questioning.

 It has long been held that the Fifth Amendment guarantees every citizen shall be protected from compulsory self-incrimination. *State v. Booth*, 11 S.W.3d 887, 893 (Mo.App.2000).

'The privilege protects an individual from being an involuntary witness against himself in any proceeding, criminal or civil, formal or informal, where his answers might incriminate him in future criminal proceedings. The privilege extends not only to answers that would completely reveal guilt of a crime, but also to questions whose answers might reveal facts which could be a link in a chain of evidence connecting him to a crime.'

*Id.* (quoting *State v. Carey*, 808 S.W.2d 861, 865 (Mo.App.1991)) (internal citations omitted).

 The Supreme Court of the United States held in *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91 (1976), " 'that the use for impeachment purposes of a defendant's silence, at the time of arrest and after receiving *Miranda* warnings, is fundamentally unfair and violates the due process clause of the Fourteenth Amendment.' " *Aaron v. State*, 81 S.W.3d 682, 693 (Mo.App.2002) (quoting *State v. Dexter*, 954 S.W.2d 332, 337 (Mo. banc 1997)). "This rule rests on the 'fundamental unfairness of implicitly assuring a suspect that his [or her] silence will not

be used against him [or her] and then using his [or her] silence to impeach an explanation subsequently offered at trial.' " *Dexter*, 954 S.W.2d at 337 (quoting *Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S.Ct. 634, 638–39, 88 L.Ed.2d 623 (1986)). Accordingly, "if a defendant chooses to remain silent upon arrest and after receiving *Miranda* warnings, it is a fundamental violation of his constitutional rights for the State to use that silence against him." *State v. Anderson*, 79 S.W.3d 420, 440–41 (Mo. banc 2002). "Silence includes not only a refusal to speak to the police, but also a request for an attorney" and " '[t]he State may not use post-arrest silence either as affirmative proof of the defendant's guilt or to impeach his or her testimony.' " *State v. Steger*, 209 S.W.3d 11, 17 (Mo.App. 2006) (quoting *Aaron*, 81 S.W.3d at 693).

 With that being said, "post-arrest silence evidence may be admissible when 'no reasonable inference of guilt can be drawn merely from the fact the defendant was informed of his or her rights and then exercised them when he or she was not being questioned at the time he or she invoked those rights.' " *Steger*, 209 S.W.3d at 17 (quoting Anderson, 79 S.W.3d at 441). " 'Nonetheless, any evidence describing the conclusion of an interrogation must be carefully scrutinized. Evidence in regard to the conclusion of an interrogation which reveals that the defendant was failing to answer a direct charge of guilt is improper.' " *Steger*, 209 S.W.3d at 17 (quoting *State v. Frazier*, 927 S.W.2d 378, 380 (Mo.App.1996)).

 In the present matter, there is nothing in the above-referenced testimony of Deputy Mobley which was improper such that Appellant's constitutional rights were violated. Deputy Mobley testified that Appellant made certain statements to him, he informed her of her *Miranda* rights, he handcuffed her, and placed her

in the back of his patrol vehicle. He then stated he did not ask her any additional questions after placing her in his vehicle because "[s]he requested to speak to an attorney." He did not recite a specific question he asked of her which she declined to answer by invoking her rights, nor did he infer that she was dodging his questions by requesting counsel. Nothing in Deputy Mobley's testimony or the questions of the Prosecutor can be interpreted as suggesting to the jury that it should find Appellant less credible because she invoked her right to an attorney or that it should draw an inference of her guilt based upon her post-*Miranda* silence. To the contrary, the Prosecutor's questions and Deputy Mobley's testimony were without a direct or even reasonably inferable suggestion that Appellant's silence had anything at all to do with her guilt or innocence. Likewise, the testimony was not being used to impeach Appellant's testimony in that she did not testify in the present manner. *See Anderson,* 79 S.W.3d at 441. Indeed, "no reasonable inference of guilt can be drawn merely from the fact that [Appellant] was informed of h[er] rights and then exercised them when [s]he was not being questioned at the time [s]he invoked h[er] rights." *Id.* Based on the foregoing, Appellant has failed to prove that the testimony in question was "error that is 'evident, obvious, and clear'" such that the plain error rule need be applied nor has she proven she was prejudiced by the trial court's failure to *sua sponte* declare a mistrial. *Roper,* 136 S.W.3d at 900. The trial court did not plainly err in failing to *sua sponte* grant Appellant a mistrial. Point I is denied.

◼ Appellant's second point relied on asserts the trial court plainly erred in failing to declare a mistrial in that during *voir dire* the State "made improper, indirect references to [Appellant's] right not to tes-tify in that he advised the jury that the defense 'does not have to put on any evidence in this case if they don't want to' and 'if the defense wants to put on evidence they may.'" Appellant urges that "[u]nless this Court grants a new trial, manifest injustice will inexorably result because the comment called the jury's attention to the fact that [Appellant] did not have to testify."

In the present matter, during *voir dire,* the Prosecutor, in explaining the course of the trial to the potential jurors, made the following statement:

There will be an opening statement by the [S]tate. Something we have to do. And then the defense will have an opportunity to make an opening statement, but they don't have to at that point. They don't have to put on any evidence in this case if they don't want to.

They don't have to put on an opening statement. If they elect to, then after that opening statement, we will start with testimony. And I will put on all my evidence, all my witnesses that we intend to call. Then once that is over with if the defense wants to put on any evidence they may, and then once that is through we may put on some rebuttal evidence, if not we will go to closing arguments.

Counsel for Appellant objected to the foregoing statements on the basis that the statements were "an inappropriate comment . . . on [Appellant's] need to put on evidence" and requested the trial court either declare a mistrial or strike the venire. The trial court stated it would review its ruling at the next break. The trial court did not rule on this issue at the next break and Appellant failed to raise this issue again until the appeal in this matter.

As with Point I above, Appellant has failed to preserve this point relied on for appellate review in that she failed to re-

quest a further ruling on this issue by the trial court and failed to include this allegation in her motion for new trial. Accordingly, our review again is for plain error under Rule 30.20 and, as already stated, "[o]ur review for plain error of a trial court's failure to *sua sponte* declare a mistrial is extremely limited." *Collins,* 150 S.W.3d at 349.

It is axiomatic that the Fifth Amendment to the United States Constitution, Article I; section 19 of the Missouri Constitution; section 546.270 of the statutes of the State of Missouri; and Rule 27.05(a) grant criminal defendants the right not to testify at trial and forbid comments by either party concerning the exercise of that right. The purpose of the aforementioned rules is to avoid focusing the attention of the jury on the fact that the defendant has failed to testify at trial. *State v. Barnum,* 14 S.W.3d 587, 592 (Mo. banc 2000). Further, "there is no question that it is error to allude, either directly or indirectly, to a defendant's failure to testify on his own behalf" and it is clear that this "prohibition extends throughout the trial, even during *voir dire.*" *Id.*

It has been held that "[a] direct reference to an accused's failure to testify is made when the prosecutor uses words such as 'defendant,' 'accused' and 'testify' or their equivalent" and "[a]n indirect reference is one reasonably apt to direct the jury's attention to the defendant's failure to testify." *State v. Neff,* 978 S.W.2d 341, 344 (Mo. banc 1998). "Where an objection is made and overruled, a direct reference to the failure of the defendant to testify will almost invariably require reversal of the conviction...." *Id.* "'An indirect reference, however, requires reversal only if the State makes it with a calculated intent to magnify the defendant's decision not to testify so as to call it to the jury's attention.'" *State v. Coker,*

210 S.W.3d 374, 386 (Mo.App.2006) (quoting *State v. Bowles,* 23 S.W.3d 775, 782 (Mo.App.2000)). "'While direct and indirect comments on a defendant's failure to testify are forbidden, the Supreme Court has instructed that, when reviewing a defendant's claim of an improper comment on his right not to testify, we must consider the comment 'in the context in which it appears.'" *Id.*

In our review, we are guided by the teachings found in *State v. Barnum,* 14 S.W.3d at 591–93, and *State v. Collins,* 42 S.W.3d 736, 741 (Mo.App.2001). In *Barnum,* the prosecutor commented during *voir dire* that "[t]he [d]efendant doesn't have to present any evidence, doesn't have to testify, and that's our legal system." *Id.* at 590. The Supreme Court of Missouri found that "[t]hese remarks did not pertain to [the defendant's] failure to testify but were merely restatements of the law and general comments concerning the rights of any defendant in a criminal trial." *Id.* at 592. Accordingly, "[c]onsidering the record as a whole, manifest injustice did not result due to the nature of the remarks and the stage of the trial at which they were made." *Id.* Likewise, in *Collins,* 42 S.W.3d at 739, during *voir dire* the prosecutor commented that "the [d]efendant doesn't have to open his mouth. They probably will and there will probably be some evidence, but he doesn't have to. That's the way the system is." The court held that "the prosecutor's remarks regarding the defendant's right not to testify were made during the prosecutor's general discussion of the burden of proof in criminal cases," *id.* at 740, and "made in the context of a discussion about the rights of a defendant in general in a criminal trial;" accordingly, the court determined "the prosecutor's comments regarding the defendant's right not to testify were not par-

ticular to [the *Collins* defendant's] decision not to testify." *Id.* at 741.

The present matter is akin to *Barnum* and *Collins.* Here, the Prosecutor's comments were made in a generalized way as he discussed with the potential jurors the general order of events in the trial as a way of familiarizing the venire with the judicial process. He made no specific reference to Appellant either as "defendant" or the "accused" and he did not reference potential "testimony" being offered by her. *See Neff,* 978 S.W.2d at 344. He referenced the fact that both sides have the opportunity to offer "evidence" and "witnesses," but there was no direct reference to the choice of Appellant to testify such that reversal is required.

Even if the comments could be construed as being indirect references to Appellant's testimony or lack thereof, there is no evidence the comments were "reasonably apt to direct the jury's attention to the defendant's failure to testify." *Neff,* 978 S.W.2d at 344. It was Appellant's burden to prove plain error and she has not done so. *See Roper,* 136 S.W.3d at 900. The trial court did not err in failing to *sua sponte* declare a mistrial in the present matter. Point II lacks merit and is denied.

In her third point relied on, Appellant maintains the trial court plainly erred in overruling her motion to suppress and admitting over defense counsel's objection evidence obtained from Appellant's trailer. She asserts her constitutional rights were violated by this unlawful search "because there was not substantial evidence from which the court could have concluded that [Mother] consented to the search."

Prior to trial, Appellant filed a motion to suppress the evidence seized from inside Appellant's trailer including "carpet, wallpaper, wallboard, bullets, bullet casing, blood samples, notebooks, and clothing" because "[t]he search was unlawful in that it was conducted without a warrant, without probable cause and was not within the scope of any exception to the warrant requirement."

A suppression hearing was held on April 25, 2007. At the hearing, Deputy Mobley testified he obtained verbal consent from Mother to search the trailer where Appellant resided, and that he continued to speak with Mother, who was "very cooperative," while he was on the scene. He also testified he received written consent from Mother to search the residence, a fact which is referenced in his police report, although no written consent form was produced before the trial court. Deputy Mobley stated he could have gotten a search warrant on the day of the shooting based on the visible evidence and circumstances at the scene, but he did not do so because he had verbal and written consent from Mother. He also stated that while he was conducting his search Mother entered the home several times and never verbalized any objections to the search.

Additionally, Deputy Linda Tuck Bobek ("Deputy Bobek"), the crime scene investigator for the Lawrence County Sheriff's Department, testified at the suppression hearing that she arrived on the scene after Deputy Mobley had conducted his initial search and was told he had received consent to search the trailer from Mother. She stated she was unsure about the existence of a written consent form in that she did not recall any forms being available on the scene. She related Mother observed them searching the trailer, remained cooperative throughout the search, and at the time did not object to the officers being in the trailer. She further related the crime scene remained open for several days and she returned several times to Appellant's trailer without any objection from Mother.

Following the testimony at the suppression hearing, the trial court found "no reason to question the credibility of the officer who said that he got [Mother's] consent and that at no time during the process according to her and the other officer did [Mother] object to the search. So that is what the Court has to go by." Accordingly, the trial court overruled Appellant's motion, and allowed Appellant a continuing objection to the evidence seized from Appellant's trailer. Appellant failed to properly preserve this complaint in her motion for new trial and again requests plain error review.

Appellate courts will not reverse a trial court's decision on a motion to suppress unless it is clearly erroneous. *State v. Smith*, 185 S.W.3d 747, 755 (Mo. App.2006). In evaluating the ruling on a motion to suppress, we review the trial court's factual findings only to determine if they are supported by sufficient, substantial evidence. *Id.* In making this determination, we view the facts and any reasonable inferences arising therefrom in the light most favorable to the trial court's ruling and disregard all contrary evidence and inferences. *Id.* Additionally, in making our determination we are required to consider the evidence presented both at the suppression hearing and at trial in determining whether the motion should have been granted or denied. *Id.*

Here, Deputy Mobley testified at the suppression hearing and at trial that Mother, the owner of the trailer in which a crime was committed by her minor daughter, gave verbal and possibly written consent for the police to search her trailer on the day of the shooting. Also, both Deputy Mobley and Deputy Bobek testified at the suppression hearing that numerous officers searched Appellant's trailer over a period of several days in full view of Mother and with her full cooperation. During that time, it appears Mother never expressed her concern about the search or voiced any type of objection to the fact that police officers were in her home. There is nothing in the record to suggest otherwise. It is clear that such warrantless searches conducted with freely and voluntarily given consent by the owner of the property are constitutionally valid. *State v. Cromer*, 186 S.W.3d 333, 347–48 (Mo.App.2005) (holding that a homeowner can verbally consent to the search of their home). Further, we defer to the trial court's determination that Deputy Mobley's testimony was credible. *State v. Shaon*, 145 S.W.3d 499, 504 (Mo.App.2004). There was sufficient, substantial evidence in the present matter to prove Deputy Mobley obtained consent from Mother prior to searching Appellant's trailer. The trial court did not plainly err in denying Appellant's motion to suppress and in admitting evidence seized from Appellant's trailer. Point III is denied.

The judgment and sentence of the trial court is affirmed.

BATES, J., and SCOTT, P.J., concur.