STATE of Missouri, Plaintiff–
Respondent,

v.

Landen E. GARRISON, Defendant–
Appellant.

No. SD 29406.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 31, 2009.

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., James B. Farnsworth, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Presiding Judge.

Landen Garrison (Defendant) appeals from his conviction of statutory sodomy in the first degree. Defendant contends the trial court plainly erred by telling the jury that he would not be testifying. Finding no merit in that contention, this Court affirms.

## I. Factual and Procedural Background

Defendant was charged by amended information with committing the unclassified felony of statutory sodomy in the first degree. *See* § 566.062.[1] The information alleged that D.B. (Victim) was less than 12 years of age at the time of the offense in April 2005. Prior to trial, the State offered evidence that Defendant had a prior conviction for forcible sodomy, and the trial court found that Defendant was a persistent sexual offender. *See* § 558.018.2. In August 2008, a jury found Defendant guilty of statutory sodomy. The court imposed a sentence of life imprisonment without eligibility for probation or parole. *See* § 558.018.3.

Defendant does not challenge the sufficiency of the evidence to sustain his conviction. This Court considers the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict. *State v. Woodmansee*, 203 S.W.3d 287, 289 (Mo.App.2006); *State v. Dillard*, 158 S.W.3d 291, 294 (Mo.App.2005). All contrary evidence and inferences are disregarded. *State v. Lawrence*, 64 S.W.3d 346, 348–49 (Mo.App.2002). Viewed from that perspective, the favorable evidence and inferences supporting the State's case against Defendant are presented below.

On April 23, 2005, nine-year-old Victim was playing in his front yard when Defendant walked by with his dog named "Baby." Victim left his yard and walked with Defendant toward the house of Victim's friend. On the way, Defendant asked Victim whether he liked candy. Victim said that he did. When they reached the friend's house, Victim sat on the front porch. Defendant left for a short time. When he returned, he gave some candy to Victim.

Defendant and Victim walked down to the railroad tracks. They sat together under a rail car and talked. Afterwards, they moved up to a nearby bridge and talked some more. Defendant then took Victim underneath the bridge and into the woods. There was a big rock at that location. Defendant exposed his penis and told Victim to pull down his pants. Victim complied. Defendant touched Victim's penis while touching his own. Then, Defendant bent down and sucked on Victim's penis.

After five minutes, Defendant stopped performing oral sex on Victim and told the boy to bend over the rock. Defendant produced a jar of Vaseline, placed some between the boy's buttocks and inserted his penis into Victim's anus. Victim was scared, crying and in pain. When Defendant was finished, he told Victim not to tell anyone what had happened. He let Victim walk home.

In the days that followed, Victim told friends at school that he had been raped by an elderly man down by the river. Victim's friends told the school counselor,

---

1. All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2009).

who in turn called the social services hotline and contacted police. Victim told the police what had happened and provided a description of his attacker. Victim told the police that Defendant had been wearing an orange hat with a deer on it. In addition, Victim said that Defendant's dog's name was "Baby." Victim also told police that Defendant had taken some beer down to the river with him and that investigators might find some red and white beer cans still there. When officers searched the area where Victim said that the crime occurred, they found two beer cans matching the description that Victim provided.

On May 6, 2005, Victim underwent a SAFE exam. The exam revealed rectal scarring, which was consistent with Victim's statement that an adult male had inserted his penis into Victim's anus two weeks earlier.

Acting on a tip, a police officer went to Defendant's residence to investigate Defendant's possible involvement in Victim's assault. Defendant invited the officer inside. The officer observed an orange hat bearing a deer's picture lying on a recliner. On a table next to the recliner, the officer saw a jar of Vaseline. Defendant agreed to accompany the officer to the police station for questioning. When the officer exited the house, he observed a number of red-and-white beer cans on the porch. It was later discovered that the cans on Defendant's porch bore a series of numbers printed on the cans found on the riverbank. As Defendant and the officer prepared to leave for the police station, Defendant called his dog "Baby." Thereafter, both Victim and Victim's grandfather independently identified Defendant from photo arrays. Victim also identified Defendant at trial.

Defendant did not testify or present any evidence. After he was found guilty of statutory sodomy in the first degree and sentenced, this appeal followed. Additional facts necessary to the disposition of this appeal will be set out below as we address Defendant's single point of error.

## II. Discussion and Decision

Defendant contends the trial court plainly erred in telling the jury that Defendant would not be testifying. The following facts are germane to the discussion of this point.

During Defendant's *voir dire,* defense counsel told the venire panel that Defendant had "a constitutional right, once charged with a crime, to be at a jury trial in that offense and continue to remain silent. He does not have to say anything in his own defense.... [Defendant] does not have to say a word." Prior to defense counsel's inquiry, neither the State nor the trial court had mentioned Defendant's right not to testify. Defense counsel asked whether anyone believed it was unfair that the State bore the burden of proof or thought that he or she could not vote to acquit Defendant without hearing his testimony. Several venirepersons expressed that they believed that an innocent person would take the stand to defend himself.

A few minutes later, a venireperson asked whether the jury would be told about Defendant's criminal history. Defense counsel responded, "No, sir, but that brings up a very interesting point. Is there anyone here who feels like they would want to know [Defendant's] history?" Counsel continued, "[T]his goes back to my question I asked earlier, which is his right to remain silent. Included in that is his right to have no history disclosed in any way." Again, neither the State nor the trial court had said anything about Defendant's background or right to remain silent. Subsequently, multiple venireper-

sons observed that they might have a problem if Defendant did not testify or if his background was not revealed.

At the conclusion of Defendant's *voir dire*, the trial court confirmed defense counsel's representation that Defendant had the right to remain silent:

I would reiterate what [defense counsel] has said. A person who is a defendant in a criminal case has an absolute right not to testify and no negative inference is to be made from that. You're not entitled under the law to hold it against the Defendants if they don't testify.

The court addressed several of the venirepersons who had expressed reservations about Defendant possibly not testifying and asked whether those persons would be able to follow the law. Some of the venirepersons said they would be able to follow the instructions, while others continued to equivocate. Ultimately, no venireperson who expressed any concern at all about Defendant's right to remain silent or about the inadmissibility of Defendant's prior history was seated on the jury.

After the State concluded its case, defense counsel informed the court during a recess that Defendant would not testify or present any evidence. The attorneys discussed instructions with the court and requested fifteen minutes each for closing argument. The court then asked the attorneys whether anything else needed to be addressed before the jury returned:

BY THE COURT: Anything else, [prosecutor], before the jury is brought back in?

BY [PROSECUTOR]: No, Your Honor.

BY THE COURT: And before I ask that of [defense counsel], I would assume that I will just announce to the jury what has transpired on the break, that we've had instructions and that during the break defense counsel announced that Defendant would not testify, will

not present evidence, and that the Defense has rested.

I want to confirm that with you on the record. Is that agreeable?

BY [DEFENSE COUNSEL]: That's fine.

When the jury returned, the trial court stated:

BY THE COURT: Please be seated. During the recess Defense counsel had an opportunity to discuss the case with Defendant and advised the Court that the Defendant would not be testifying and that the Defense elected not to present evidence.

So we've taken the opportunity to work on the final form of the jury instructions during the extended break. [Defense counsel], is it correct that Defendant elects not to present evidence and that the Defense rests?

BY [DEFENSE COUNSEL]: Yes, Your Honor, that's correct.

The trial court then read the instructions to the jury. Included among these instructions was Instruction No. 5, submitted at Defendant's request, which read: "[u]nder the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify."

■ On appeal, Defendant contends that the trial court's statement about Defendant not testifying constituted an impermissible direct comment on that subject. Defendant acknowledges that he did not object to the statement and requests plain error review. Rule 30.20 authorizes an appellate court, in its discretion, to review for plain error affecting a defendant's substantial rights "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id.;*

*State v. Wurtzberger,* 40 S.W.3d 893, 897 (Mo. banc 2001). Rule 30.20 places a much greater burden on a defendant than an assertion of prejudicial error. *State v. Deckard,* 18 S.W.3d 495, 497 (Mo.App. 2000). "A defendant must not only show prejudicial error occurred, but must also show that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result if the error were to be left uncorrected." *Id.* The burden of proving the existence of such manifest injustice or miscarriage of justice rests on the defendant. *State v. Campbell,* 122 S.W.3d 736, 740 (Mo.App.2004); *see State v. Stites,* 266 S.W.3d 261, 270 (Mo.App.2008). In a direct appeal setting, plain error cannot serve as a basis for granting the defendant a new trial unless the error was "outcome determinative." *Deck v. State,* 68 S.W.3d 418, 427 (Mo. banc 2002); *State v. Armentrout,* 8 S.W.3d 99, 110 (Mo. banc 1999). "In the absence of an error of this magnitude, no manifest injustice or miscarriage of justice exists." *Campbell,* 122 S.W.3d at 740. Here, Defendant argues the trial court's statement that Defendant would not be testifying was a direct comment upon Defendant's right not to testify and as such, constitutes a plain error resulting in manifest injustice if left uncorrected. This Court disagrees.

■ As Defendant correctly points out, a criminal defendant has an absolute right not to testify. U.S. Const. amend. V; MO. Const. art. I, § 19. If a defendant chooses not to testify, the attorneys in the case are prohibited from commenting on it, either directly or indirectly. § 546.270; Rule 27.05(a); *State v. Barnum,* 14 S.W.3d 587, 591 (Mo. banc 2000). This prohibition extends throughout the trial, including during *voir dire,* in order "to avoid focusing the jury's attention upon a defendant's failure to testify." *Barnum,* 14 S.W.3d at

591–92; *State v. Neff,* 978 S.W.2d 341, 344 (Mo. banc 1998). A direct reference to an accused's failure to testify is made using words such as "defendant," "accused" and "testify" or their equivalent. *Neff,* 978 S.W.2d at 344. In *Neff,* our Supreme Court refused to follow "the extreme rule" that "an isolated direct reference to a defendant's failure to testify mandates reversal regardless of corrective action taken by the trial court." *Id.* at 346. The prejudice from such a reference or comment can normally be cured by an instruction to the jury. *Id.* at 345. "When considering a defendant's claim of an improper comment on his right to remain silent, the appellate court must also consider the comment in the context in which it appears." *Id.*; *Stites,* 266 S.W.3d at 269; *State v. Spencer,* 50 S.W.3d 869, 876 (Mo.App.2001).

In the context of this case, the trial court's comment that Defendant would not be testifying, as a prelude to confirming with defense counsel that the defense wished to rest, was not so egregious that it resulted in manifest injustice or miscarriage of justice. We reach this conclusion for three reasons.

First, any prejudice that may have allegedly arisen from the trial court's comment was minimal in light of defense counsel's extensive *voir dire* on the subject of Defendant's right not to testify and the subsequent removal of any venireperson who said they would be concerned if Defendant did not testify. Recently, this Court addressed a factually similar case in which the defendant was the first to raise the issue of his right not to testify during *voir dire.* In *State v. Chaddock,* 280 S.W.3d 164 (Mo.App.2009), the defense attorney informed the venire panel that the defendant had a constitutional right not to testify and asked whether any venireperson would hold the defendant's choice not to testify against him. *Id.* at 166. Several

panelists responded that they might assume the defendant was hiding something if he did not testify. *Id.* When the court asked if the panelists could follow the court's instructions, at least one panelist responded affirmatively. *Id.* It was after both of these exchanges took place, that the prosecutor clarified that the defendant "may not testify or may testify," and that the court would instruct the jury that no inference was to be drawn from the defendant's choice. *Id.* at 167. None of the panelists who expressed any tendency to hold it against the defendant if he failed to testify were seated on the jury. *Id.* At defendant's request, the jury later was properly instructed regarding defendant's right not to testify. *Id.* On appeal, the defendant requested plain error review and alleged that the trial court erred in not declaring a mistrial after the prosecutor mentioned defendant's right not to testify. This Court, however, found that the trial court did not even abuse its discretion in declining to declare a mistrial because the *defendant* was the first party to bring up his right not to testify. *Id.* at 168. This Court concluded that, because the defendant first broached the subject of his right not to testify and because the jury ultimately was instructed that no inference was to be raised from the defendant's choice, the defendant had "failed to demonstrate *any* prejudice as a result of the prosecutor's statement, let alone facially demonstrate that any manifest injustice or miscarriage of justice ha[d] occurred." *Id.* (emphasis in original). We reach the same conclusion here. By the time the court mentioned Defendant's decision not to testify, the jurors were well informed of his right not to do so because Defendant had prepared them for his decision by being the first to bring up the issue. Defendant has cited no case in which an appellate court has reversed a conviction based upon a reference to the defendant's decision not to testify when the defense first brought the issue to the jury's attention.[2] This Court further notes that the trial court's single statement that Defendant would not be testifying was a fact that would have been evident to the jury when the defense rested without Defendant having taken the stand. The court's comment was isolated and "not obviously intended to poison the minds of the jurors against the defendant." *State v. Neff,* 978 S.W.2d 341, 346 (Mo. banc 1998); *State v. Spencer,* 50 S.W.3d 869, 877 (Mo.App.2001).

■ Second, the trial court's comment did not result in manifest injustice or miscarriage of justice because the jury was properly instructed, at Defendant's request, that "[u]nder the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify." *See State v. Wheeler,* 219 S.W.3d 811, 817 (Mo.App.2007); *Spencer,* 50 S.W.3d at 876 n. 3; Rule 27.05(b). Prejudice that may occur from a direct reference to the defendant's failure to testify "can normally be cured by an instruction to the jury." *Wheeler,* 219 S.W.3d at 816; *Neff,* 978 S.W.2d at 345. A jury is presumed to know and follow instructions given by the

---

2. Defendant relies upon *State v. Howard,* 540 S.W.2d 86 (Mo. banc 1976); *State v. Snelling,* 647 S.W.2d 909 (Mo.App.1983); and *State v. Gray,* 503 S.W.2d 457 (Mo.App.1973). None of these cases involved a situation in which the defense first mentioned the defendant's right not to testify and the jury was given a proper instruction on that issue at the defendant's request. Therefore, these decisions are factually distinguishable. In addition, all three cases pre-date *Neff,* which declined to follow the rule that "an isolated direct reference to a defendant's failure to testify mandates reversal regardless of corrective action taken by the trial court." *Neff,* 978 S.W.2d at 346.

trial court. *Wheeler*, 219 S.W.3d at 816; *State v. Davis*, 122 S.W.3d 690, 693 (Mo. App.2003). "It is demeaning to our jury system to assume that Missouri jurors are universally too ignorant or biased to follow the trial court's direction .... " *Neff*, 978 S.W.2d at 346; *Wheeler*, 219 S.W.3d at 817. We similarly find that the jury instruction was sufficient to cure any prejudice that may have resulted. *Wheeler*, 219 S.W.3d at 817; *Spencer*, 50 S.W.3d at 877.

Lastly, the trial court's comment did not result in a manifest injustice or miscarriage of justice because the evidence, none of which is challenged in this appeal, overwhelmingly established Defendant's guilt. *See State v. Rollen*, 133 S.W.3d 57, 64 (Mo.App.2003) ("[n]o manifest injustice or miscarriage of justice results when guilt is established by overwhelming evidence"); *State v. Pembleton*, 978 S.W.2d 352, 354 (Mo.App.1998) (similar holding). At trial, Victim testified that Defendant lured him down to the river and that Defendant performed acts of oral and anal sodomy on him. In Victim's testimony, he exhibited sexual knowledge that one would not normally expect a boy of his age to possess, particularly regarding Defendant's use of Vaseline as a lubricant. Victim's testimony was corroborated by the results of Victim's medical exam, which showed that Victim had suffered rectal trauma consistent with being anally penetrated two weeks prior to the exam. Victim also positively identified Defendant, both from a photo array shortly after Defendant's apprehension and then again at trial. Physical evidence supported the identification. Defendant had a dog named "Baby," an orange hat with a picture of a deer on it and the jar of Vaseline, just as Victim remembered. The police found beer cans at Defendant's residence that matched both the descriptions and serial numbers of cans found on the riverbank. Based on the evidence presented, it cannot be said

the trial court's isolated comment that Defendant would not testify had any impact on the outcome of the trial. Therefore, Defendant has failed to meet his burden of demonstrating the existence of a plain error which will result in a manifest injustice if left uncorrected. *State v. Campbell*, 122 S.W.3d 736, 740 (Mo.App.2004); *see State v. Stites*, 266 S.W.3d 261, 270 (Mo.App. 2008). Point denied.

The judgment of the trial court is affirmed.

BARNEY, J., and BURRELL, J., Concur.